J. B. KRAMER GROCERY COMPANY, INC., Appellant,

v.

GLENS FALLS INSURANCE COMPANY et al., Appellees.

No. 73–1853.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1974.

Decided June 6, 1974.

H. David Blair, Batesville, Ark., for appellant.

Jeff Davis, Jr., Little Rock, Ark., for appellees.

Before GIBSON, BRIGHT and STEPHENSON, Circuit Judges.

GIBSON, Circuit Judge.

The burning dispute here is who should bear the loss from a fire set by the financially pressed owner of the contents of a grocery store—the security holder or the insurance companies? Plaintiff Kramer,[1] a prior owner, was holder of a security interest in the contents (stock and fixtures) of the store to secure repayment of an indebtedness owed it by the new owner, Teddy Watson. Defendant insurance companies had issued standard fire policies totaling $125,000 covering the:

> [C]ontents of the one store, approved roof, concrete block building, occupied as a grocery store and located R. 100–112 E. First Street, Newport, Arkansas. Serial #2375.

These policies named Kramer in the mortgage clause of the policy. This was done to protect Kramer's security interest in the contents. The loss payable clause, substantially identical in each policy, however, limits the mortgagee's coverage to building items.[2]

The dispute may be shortly summarized. If the Standard Mortgage Clause applies, the defense of Watson's arson is unavailable to the insurance companies. If it does not and a standard loss payable clause that the insurance companies say was accidently omitted applies, the defense is available and Kramer loses. The District Court[3] determined that the Standard Mortgage Clause did not apply and that the defense of arson was available. Summary judgment for defendants was later rendered as there was no dispute that the loss was as a result of Teddy Watson's arson. Kramer appeals.

Kramer argues that the language limiting the loss payable clause to building items is ambiguous and should be construed most strongly against the insurer; that this limiting language is inconsistent with the entire policy and should be disregarded; and that the District Court erroneously reformed the insurance contract by finding Kramer was entitled only to the benefit of the general loss payable clause and not the Standard Mortgage Clause.[4] We have concluded the District Court erred in interpreting the policies and therefore reverse.

Construction of the insurance policies is governed by Arkansas law. It is settled law in Arkansas, as elsewhere, that provisions of an insurance contract must be considered as a whole, keeping in mind the purpose for which the contract was written. Sovereign

---

1. Reference in this opinion to Kramer is either to Kramer Grocery Company, Inc., or J. B. Kramer, its majority stockholder. The insurance policies were issued either to the Kramer Grocery Company or J. B. Kramer, individually. The interests of these parties are identical for purposes of this appeal.

2. This policy provision reads:
   STANDARD MORTGAGE CLAUSE: (Applies to Building Items only and is effective only when this policy is made payable to a named mortgagee or trustee): Loss or damage, if any, under this policy, shall be payable to the mortgagee (or trustee), named on the first page of this policy, as interest may appear, and this

   insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property * * *.

3. The Memorandum Opinion of the District Court is reported at 356 F.Supp. 771 (E.D. Ark.1973).

4. Defendants chose not to respond to these arguments in their brief, limiting it to recitation of the well-established "clearly erroneous" rule on review of District Court factual findings and the special weight to be given a determination of local law by the trial court.

Camp, W.O.W. v. Hardee, 188 Ark. 542, 549, 66 S.W.2d 648, 651 (1934):

> It is the settled rule of this court that insurance contracts, like all others, must be considered as a whole and the several parts construed together, those defining liability as well as those stipulating against it; and that since the contract was written by the insurer, it must be construed liberally in favor of the insured and strictly against the insurer; if there are any conflicting provisions, those most favorable to the insured must be given effect to effectuate the purpose for which the insured paid his premiums * * *.

Here the policies were taken out specifically to provide coverage for the contents of the building; this purpose clearly appears from both the policies themselves and the testimony of the agents who wrote the policies. However, the Standard Mortgage Clause purports to limit recovery on the policy to "building items" which the District Court construed to mean real property. Such a limitation is in clear conflict with the well-known and expressed purpose for obtaining the policies and if given effect would destroy the coverage for which the insurance companies had accepted premiums.

The District Court recognized that Kramer should be considered to have coverage on the contents of the building; it then concluded that the coverage generally afforded a mortgagee of personal property in Arkansas is that provided by a simple loss payable clause; that such forms should have been attached to the policies; and that acts of the owner would be a defense under the simple loss payable clause.

█ We think this was error. Even if we accept that these forms should have been attached, we are still faced with the fact that they were not, and the Standard Mortgage Clause insulating a mortgagee from the owner's acts was a part of the policies. Kramer's rights under the policies should not have been determined by reference to a simple loss payable clause not a part of the policies in question. The court was limited to determining the coverage provided from the terms of the policies, bearing in mind the purpose for which they were written, without regard to what the insurance companies might now wish they had included. It was not proper to rewrite the terms of the insurance contract for the benefit of the insurer, particularly in light of the general rule that the terms of insurance contracts are construed most strongly against the insurer who prepares the contract of insurance. M.F.A. Mutual Insurance Co. v. McKinley, 245 Ark. 326, 327, 432 S.W.2d 484, 485 (1968); Sovereign Camp, W.O.W. v. Hardee, *supra*; Maloney v. Maryland Casualty Co., 113 Ark. 174, 179, 167 S.W. 845, 847 (1914).

█ It is clear that there is a conflict in the policy provisions. The policies purport to cover the mortgagee's interest in the contents of the building while on the other hand purport to limit payment for loss to "building items." Kramer contends that "building items" is ambiguous and should be construed to include "building contents." Terms used in insurance contracts are to be construed in their plain, ordinary, and popular sense. American Homestead Insurance Co. v. Denny, 238 Ark. 749, 751, 384 S.W.2d 492, 494 (1964). The District Court considered the term "building items" to refer only to real property [5] and such was the interpretation of the term in London & Provincial Marine & General Insurance Co. v. Sykes, 66 S.W.2d 382 (Tex.Civ.App. 1933), the only other case we have found involving the term. This does not necessarily establish that "building items" might not be considered ambiguous and could not be construed to include "building contents," but we do not predicate our decision on that possible ambiguity.

█ Rather, we believe that the limitation of the Standard Mortgage Clause to "building items" should have been

---

5. 356 F.Supp. at 777.

disregarded as being repugnant to the purposes of the policy as a whole, that is, to provide coverage of the contents of the building.[6] *See* Traders & General Insurance Co. v. Champ, 226 F.2d 829 (9th Cir. 1955) (on denial of rehearing); 13 J. Appleman, Insurance Law and Practice § 7383 (Supp.1974). Such has been done in factually similar cases. Aetna Life & Casualty Co. v. Chas. S. Martin Distributing Co., 120 Ga.App. 133, 169 S.E.2d 695 (1960); London & Provincial Marine & General Insurance Co. v. Sykes, *supra*. Kramer's interest was therefore covered by the policies in question and his right to recovery is unaffected by the acts of the insured.

■ We do not however direct the entry of judgment in favor of the plaintiff on this appeal. At oral argument there was a suggestion that plaintiff Kramer may have conspired with Watson to have the grocery burned down. Defendants have not had an opportunity to develop a record on this issue as the case was decided below on defendants' Motion for Summary Judgment. We feel that the defendants should have an opportunity to present this issue in the trial court if they wish to do so. While we have determined that Watson's acts will not operate as a defense, Kramer's involvement, if any, could operate as a defense under the policies. Home Ins. Co. v. Springdale Motor Co., 200 Ark. 893, 141 S.W.2d 522 (1940); Farmer's Union Mutual Ins. Co. v. Jordan, 200 Ark. 711, 140 S.W.2d 430 (1940); 5 J. Appleman, Insurance Law and Practice § 3113 (1970).

The cause is therefore reversed and remanded to the District Court for further proceedings consistent with this opinion and to allow the defendants to raise by means of affirmative defense the possible involvement of Kramer in the arson of the grocery store.

---

6. The District Court determined that the standard mortgage clause was limited only to mortgagees of real property and could not be used to give recognition to the rights of a mortgagee of personal property. 356 F. Supp. at 775–76. While we give great deference to the district courts' determinations of local law in diversity cases, Highway Construction Co. v. Moses, 483 F.2d 812, 814 n. 2 (8th Cir. 1973); Continental Grain Co. v. Fegles Construction Co., 480 F.2d 793, 796 (8th Cir. 1973); Owens v. Childrens Memorial Hospital, 480 F.2d 465, 467 (8th Cir. 1973); Luke v. American Family Mutual Insurance Co., 476 F.2d 1015, 1019 n. 6, aff'd en banc 476 F.2d 1023 (8th Cir.), cert. denied, 414 U.S. 856, 94 S.Ct. 158, 38 L.Ed.2d 105 (1973); it is no longer conclusive. We now undertake a full review of the available case law in the applicable jurisdiction. Here, since there is no controlling view in Arkansas, we have considered the views of other authorities on the question and feel that the result we reach would most likely be adopted by the Arkansas courts if presented with the question at hand.