FOREMOST INSURANCE COMPANY, Appellee,

v.

Chris J. SHEPPARD d/b/a Anthony Island Sea Plane Base and Kenneth Dale Landreth.

Loretta June Jones, Executrix of the Estate of Garnett Jones, Deceased, Intervenor-Appellant.

No. 79–1233.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 9, 1979.

Decided Dec. 14, 1979.

---

**6.** On appeal Karsky also points to evidence that he did not personally prepare the prior returns.

Irene Barnes, McMath, Leatherman & Woods, Little Rock, Ark., argued, Henry Woods, Little Rock, Ark., and David Q. Reed, Kodas, Reed & Gingrich, Kansas City, Mo., on brief, for appellant.

Chester C. Lowe, Jr., Little Rock, Ark., argued, Lowe & Hamlin, Little Rock, Ark., on brief, for appellee.

Before ROSS and STEPHENSON, Circuit Judges, and McMANUS,* Chief District Court Judge.

STEPHENSON, Circuit Judge.

In this diversity action, defendants Chris J. Sheppard d/b/a Anthony Island Sea Plane Base, Kenneth Dale Landreth and defendant-intervenor Loretta June Jones appeal from the district court's[1] order granting summary judgment in favor of plaintiff Foremost Insurance Company (Foremost). Foremost petitioned the district court for a declaratory judgment that an aircraft insurance policy it issued to defendant Chris J. Sheppard d/b/a Anthony Island Sea Plane Base did not provide coverage for a sea plane accident which occurred on February 17, 1974. The district court held that this aircraft policy did not provide coverage for the accident. We reverse.

Some time prior to February 17, 1974, Garnett Jones made arrangements with Anthony Island Sea Plane Base to receive instruction in the operation of a sea plane. Jones was a licensed commercial pilot for Braniff Airlines but desired to qualify for a sea plane rating on his pilot's license. Anthony Island Sea Plane Base furnished Kenneth Dale Landreth, a qualified pilot instructor, to give sea plane flying instruction to Jones. A sea plane owned by Sheppard

---

* The Honorable Edward J. McManus, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

1. The Honorable Oren Harris, United States Senior District Judge for the Western District of Arkansas.

d/b/a Anthony Island Sea Plane Base and insured by Foremost was used for this instruction.

On February 14, 1974, Landreth gave Jones two hours of sea plane dual flight instruction which included supervision of: take-offs; landings; sailings; docking; slow and fast taxi on both pontoon floats; emergency landings and procedures; and cross-wind landings and take-offs.

On February 17, 1974, Landreth continued flying instruction for about forty minutes. During this period, Landreth demonstrated two landings, fast taxi procedure, and take-offs on a single pontoon float, one on each float. Jones then made four landings, fast taxi and take-offs on the left pontoon float, and two on the right pontoon float. During the third landing on the right pontoon float and while fast taxiing, the front portion of the pontoon float dug into the water. The aircraft flipped over on its back and sank. Garnett Jones was drowned.

On March 10, 1976, Loretta June Jones, as executrix of Garnett Jones, filed a wrongful death action in the United States District Court for the Western District of Arkansas. Named defendants in that action were Chris J. Sheppard d/b/a Anthony Island Sea Plane Base and Kenneth Dale Landreth.

On March 16, 1976, Foremost was notified that this wrongful death action had been filed and a demand for defense was asserted at that time. Foremost filed answers for the defendants but notified them that it intended to undertake defense of the suit with a full reservation of all rights to disclaim coverage for the occurrence and to withdraw from defense of the suit.

On May 24, 1976, Foremost filed this separate action for a declaratory judgment against Sheppard d/b/a Anthony Island Sea Plane Base and Landreth, claiming that Jones, as a student pilot, fell within a clause excluding coverage for pilots or crewmen

and therefore the aircraft policy afforded no coverage for the February 17, 1974 accident. In an unpublished opinion, the district court granted Foremost's motion for summary judgment, holding that the aircraft policy did not provide coverage for the accident.

Before reviewing the district court's decision, we will first examine relevant portions of the Foremost aircraft insurance policy.

The first page of the policy specifies the types of coverage provided and the purposes for which the aircraft may be used. The coverages at issue here are those labeled "A" and "B".

Coverage A is entitled "Bodily Injury Liability Excluding Passengers." It states:

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, excluding passengers as defined herein, caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft.[2]

Coverage B is entitled "Passenger Bodily Injury Liability." It states:

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any passenger as defined herein, caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft.[3]

The purposes for which the aircraft may be used are prominently indicated on this first page to be: (a) Pleasure and Business; (b) Industrial Aid; and (c) Limited Commercial. The term "Limited Commercial" is defined as including all the uses permitted in (a) and (b) above and including Student Instruction and Rental to pilots but

---

**2.** Limits of liability under Coverage A are $100,000.00 for each person and $300,000.00 for each occurrence.

**3.** Limits of liability under Coverage B are $50,000.00 for each person and $100,000.00 for each occurrence.

excluding passenger carrying for hire or reward. Sight-seeing rides are also permitted.

The coverage prominently indicated on the first page is limited and qualified in subsequent pages of the policy. In the "Exclusions" section, paragraph nine (Exclusion Nine) provides that the policy does not apply under coverages A and B "to bodily injury, sickness, disease or death of any person who is a Named Insured or a pilot or crew member."

The policy defines "passenger" as "any person or persons while in, on or entering the aircraft for the purpose of riding or flying therein or alighting therefrom following a flight or attempted flight therein, *excluding crew or pilots*." (Emphasis added). "Crew" and "Pilot" are defined as "any person or persons involved in the operation of the aircraft while in flight."

In addition, a "Pilot Warranty," referred to by the parties as the "pilot clause," in the policy permits instructors meeting certain requirements to operate the insured plane.

Finally, "Special Provisions Endorsement" number six states:

This Policy does not apply to any occurrence or to any loss or damage occurring while the aircraft is being operated in flight by a Student Pilot unless each flight is under the direct supervision and specifically approved by a properly qualified Flight Instructor certificated by the Federal Aviation Administration. This exclusion is not applicable to any Student Pilot following issuance of a Private Pilot Certificate.

In summary, the Declaration Section which permits the aircraft to be utilized for "Limited Commercial" purposes, the Pilot Warranty and the Special Provisions Endorsement all expressly authorize the aircraft to be used for student instruction. Coverage A (bodily injury liability excluding passengers) and Coverage B (passenger bodily injury liability) are both limited by

Exclusion Nine to preclude coverage for any person who is a named insured, pilot or crew member. Despite the three provisions authorizing student instruction, Foremost contends that the policy's broad definitions of "crew" and "pilot" operate to preclude any coverage for Jones' death.

Therefore, we must decide whether the Foremost aircraft insurance policy, and specifically the provisions detailed above, afford coverage for the February 17, 1974 sea plane accident.

Appellants contend that the three provisions in the policy which refer to student pilots or student instruction[4] conflict with the exclusion for pilots and crew members (Exclusion Nine).[5] They assert that this conflict creates an ambiguity in the policy which must be resolved against Foremost. Alternatively, appellants assert that even if the policy is not considered ambiguous, the decedent Jones is not included within the exclusion for pilots and crew members (Exclusion Nine) because he was a "student pilot." Appellants maintain that had Foremost intended to exclude "student pilots" from coverage, it should have so specified in Exclusion Nine.

Appellee Foremost counters by asserting that decedent Jones "inescapably" fell within the definition of "pilot" or "crew," and was therefore excluded from coverage pursuant to Exclusion Nine.

Our task in this diversity action is to apply the law of Arkansas to the issues before us and in so doing we give great weight to the district court's view of state law. *American Motorists Ins. Co. v. Samson*, 596 F.2d 804, 807 (8th Cir. 1979); *Gatzemeyer v. Vogel*, 544 F.2d 988, 992 (8th Cir. 1976). The district court in its opinion noted that "[t]he parties agree that the law of Arkansas applies to this case, and have pointed out no Arkansas case similar to the case at bar or construing a similar policy of insurance." However, general principles of

---

4. The Declaration Section, the Pilot Clause (or Pilot Warranty) and the Special Provisions Endorsement. These three provisions are set forth in text, *supra*.

5. Exclusion Nine is quoted in text, *supra*.

insurance policy construction are well settled in that state and it is appropriate that they be reviewed.

Arkansas courts must strictly interpret exclusions to insurance coverage and resolve all reasonable doubts in favor of the insured. *State Farm Mut. Auto. Ins. Co. v. Traylor*, 562 S.W.2d 595, 596 (Ark.1978). *See also Life and Casualty Insurance Co. of Tenn. v. Gilkey*, 255 Ark. 1060, 505 S.W.2d 200, 202 (1974) (insurance contracts must be interpreted so as to resolve all reasonable doubts in favor of the insured).

The Arkansas Supreme Court stated in *Continental Casualty Co. v. Davidson*, 250 Ark. 35, 463 S.W.2d 652, 655 (1971):

> Different clauses of a contract must be read together and the contract construed so that all of its parts harmonize, if that is at all possible, and, giving effect to one clause to the exclusion of another on the same subject where the two are reconcilable, is error. (Citations omitted). * * * What we said in *Fowler* (*Fowler v. Unionaid Life Ins. Co.*, 180 Ark. 140, 20 S.W.2d 611) is particularly appropriate here, viz:
>
> > It is also a well-settled rule in construing a contract that the intention of the parties is to be gathered not from particular words and phrases but from the whole context of the agreement. In fact, it may be said to be a settled rule in the construction of contracts that the interpretation must be upon the entire instrument and not merely on disjointed or particular parts of it. The whole context is to be considered in ascertaining the intention of the parties, even though the immediate object of inquiry is the meaning of an isolated clause. * * *
>
> The rights and liabilities of the parties to an insurance contract must be determined by considering the language of the entire policy. (Citation omitted). Legal effect must be given to all the language used, and the object to be accomplished by the contract should be considered in interpreting it. (Citation omitted). Whatever the construction of a particular clause standing alone may be, it must be read in connection with other clauses limiting or extending the insurer's liability.

■ In addition, any intent to exclude coverage in an insurance coverage should be expressed in clear and unambiguous language: "any ambiguity in an exclusionary clause must be construed strictly against the insurance company and liberally in favor of the insured." *Union Bankers Ins. Co. v. National Bank of Commerce*, 241 Ark. 554, 408 S.W.2d 898, 900 (1966). *Accord First Pyramid Life Ins. Co. of America v. Thornton*, 250 Ark. 727, 467 S.W.2d 381, 382 (1971).

We have reiterated these general principles of Arkansas law in our own decisions. *See, e. g., Ritter v. U. S. Fidelity & Guaranty Co.*, 573 F.2d 539, 542 (8th Cir. 1978) (an insurance policy is to be interpreted and construed liberally in favor of the insured and strictly against the insurer); *J. B. Kramer Grocery Co. v. Glens Falls Insurance Co.*, 497 F.2d 709, 710–11 (8th Cir. 1974) (provisions of an insurance contract must be considered as a whole, keeping in mind the purpose for which the contract was written; the terms of insurance contracts are construed most strongly against the insurer who prepares the contract of insurance); *Missouri Pacific Railroad Co. v. Winburn Tile Mfg. Co.*, 461 F.2d 984, 988–89 (8th Cir. 1972) (quoting portions of *Davidson, supra*, with approval).

Unfortunately, no Arkansas decision speaks directly to the particular situation before us. However, we believe that the Arkansas Supreme Court would consider and analyze, as did the district court, two decisions which have construed similar aircraft policies in similar factual situations.

The first decision is *Mathews v. Ranger Insurance Co.*, 281 So.2d 345 (Fla.1973). In *Mathews*, a student pilot died in an aircraft crash. The decedent's administratrix and survivors brought an action seeking wrongful death and survivor damages pursuant to Florida statutes. The trial court held that the policy afforded coverage for the damages sought, but the state district court of

appeal reversed. The Florida Supreme Court held that the aircraft policy afforded coverage under the circumstances in that case. The majority in *Mathews* concluded that the insurance contract's Exclusion Nine [6] did not preclude policy coverage for the student pilot accident. The court stated:

> That single provision which makes reference to crew or pilots is so incongruous when read with the other terms of the contract as to render the entire agreement ambiguous. Every relevant statement in the application and the policy, except that single fine-print exclusion, is aimed at providing insurance coverage for church members taking flying instructions. To hold that such coverage is not present now would be an absurd result disallowed by any reasonable construction of the policy as dictated by the provisions of [a Florida statute].

*Id.* at 349. In addition, the Florida Supreme Court held that even if Exclusion Nine could somehow be deemed compatible with the terms of the insurance application [7] and the main provisions of the policy, the decedent-student pilot would not be included within the terms of that exclusion. The court reasoned that, in a very real sense, a "student pilot" was not a "pilot" or member of the "crew" because he was not responsible for the operation of the plane. Therefore, the decedent could not be excluded from coverage pursuant to Exclusion Nine.

Reaching an opposite result from *Mathews* is *Pan American Fire & Cas. Co. v. Edwards Aircraft, Inc.,* 377 F.Supp. 205

(N.D.Ala.1974). There, a federal district court, applying Alabama law, held that a nearly identical exclusionary provision precluded coverage for the death of a student pilot. The court determined that the decedent-student pilot was included within the policy definition of "pilot" or "crew" and found that the policy's Exclusion Nine was not inconsistent or in conflict with other provisions of the policy or declarations. The court reasoned that the policy provisions, when read together, protected some student pilots against injury done to persons *outside* the aircraft, or to passengers within. *Id.* at 208. The court also noted that the Alabama Supreme Court had upheld analogous exclusions, even while recognizing that other states held to the contrary. *Id.* Having noted the Alabama Supreme Court's tendency to uphold similar exclusions, the court cited the dissenting opinion in *Mathews, supra,* which stated: "Whatever happened to CONTRACT principles?" [8] Applying Alabama law, the court concluded that contract principles are "alive and doing well" in that state and upheld Exclusion Nine. However, the court recognized that the distinction from *Mathews* was one of degree only and concluded that *Mathews* would control if the law of Florida was applied.[9]

■ In the instant proceedings, the district court followed *Pan American Fire & Casualty Co., supra.* The court determined that the Foremost policy contained no incongruous or ambiguous provisions which would lead to a construction affording coverage for the February 17, 1974 accident. It concluded that there was "no question"

---

**6.** Exclusion Nine within the policy considered in *Mathews* is identical to Exclusion Nine in the Foremost policy before this court. In addition, the policy provision which defined "pilot" or "crew" is nearly identical to the definition of those terms in the Foremost policy.

**7.** We recognize that the majority in *Mathews* placed certain reliance upon language in the insured's application for insurance in support of its holding that coverage was provided for the accident. In the case at bar, there was no evidence presented regarding Sheppard's appli-

cation for insurance. Nevertheless, the court concludes that because of the three particular references to student pilot instruction in the Foremost policy, the lack of insurance application evidence in this case does not render the court's reasoning in *Mathews* distinguishable.

**8.** *Mathews, supra,* 281 So.2d at 350 (Dekle, J., dissenting).

**9.** 377 F.Supp. at 207, n.7.

that the decedent Jones was, at the time of the accident, a "pilot" or "crew" member excluded from coverage under Exclusion Nine because he was actually controlling the aircraft.[10] We disagree.

Contrary to the district court, we agree with appellants' contention that the "Limited Commercial" purpose provision of the policy, the Special Provisions Endorsement and the Pilot Warranty demonstrate that use of the insured aircraft by student pilots was anticipated and authorized by the Foremost policy. Exclusion Nine, coupled with the policy's broad definition of "pilot" and "crew," creates an incongruity in the policy because it would preclude coverage for the death of a student pilot whose use is expressly authorized in other provisions.

We recognize that this incongruity might plausibly be reconciled by construing the policy strictly and technically. *See Pan American Fire & Casualty Co., supra,* at 208, 209 (policy construed under Alabama law to cover some student pilots for bodily injury to persons outside the aircraft, as well as to passengers in the aircraft; therefore; no inconsistency existed in the policy). It is our view, however, that the Arkansas Supreme Court would construe the Foremost policy differently than did the court in *Pan American Fire & Casualty Co.* We conclude that the Arkansas Supreme Court would not allow Foremost to withdraw apparent coverage for student pilots by its subsequent inclusion of Exclusion Nine in the policy. Upon a review of the entire aircraft policy, we believe that an average policyholder would be justified in concluding that liability coverage is provided for student pilots. If Foremost had intended to provide only third party liability coverage for student pilots, it should have plainly said so. We therefore hold that the policy is ambiguous because of the conflict between Exclusion Nine and the other provisions which authorize student pilot instruc-

tion. This ambiguity, under settled principles of Arkansas law, must be resolved against Foremost.

In addition, even if Exclusion Nine could be reconciled with those provisions in the policy which authorize student pilot instruction, we would nevertheless hold that the terms of the Exclusion Nine do not include "student pilots." We agree with the majority in *Mathews* that "pilot" or "crew" connote persons *ultimately responsible* for the operation of the plane. *See Mathews, supra* at 349–50. It is our view that the Arkansas Supreme Court would hold that had Foremost intended to exclude "student pilots" from coverage, it should have so specified in its policy. Upon review of the entire policy, Exclusion Nine and the accompanying definition of "pilot" and "crew" are in themselves ambiguous because of their failure to make provision for "student pilots." *See generally Thornton, supra,* 467 S.W.2d at 382 (liability for accidental death will not be destroyed by the language of an exception unless clear and free from reasonable doubt; any ambiguity contained in an exception must be resolved against the insurer) (citing 13 Appleman, Insurance Law and Practice, § 7427 (1943)).

We conclude that the Foremost aircraft insurance policy affords coverage for the February 17, 1974 accident. The judgment of the district court is reversed.

Reversed.

---

**10.** The district court determined that this conclusion was required by the stipulation of the parties. We cannot agree. The stipulation at most indicates decedent Jones was a "student pilot."