667 F.2d 760
 Evelyn L. ZRUST, Personal Representative of the Estate of
John A. Zrust, Deceased, Appellee,
v.
SPENCER FOODS, INC., Appellant.
Waymar Transport Corp., Donald William Mathis; Per Mar
Security & Research Corporation and Hartford
Accident & Indemnity Company.
 No. 81-1453.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 15, 1981.
Decided Jan. 11, 1982.
 
 Michael F. Kinney (argued) and Ronald F. Krause of Cassem, Tierney, Adams, Gotch & Douglas, Omaha, Neb., for Spencer Foods, Inc., appellant.
 Martin A. Cannon (argued) of Matthews, Cannon & Riedmann, P. C., Omaha, Neb., for appellee.
 Before BRIGHT and ROSS, Circuit Judges, and LARSON, Senior District Judge.*
 BRIGHT, Circuit Judge.
 
 
 1
 Defendant Spencer Foods, Inc. (Spencer) appeals from a judgment in the amount of $175,000, plus costs, awarded to plaintiff Evelyn L. Zrust by the district court[1] following a jury verdict in a negligence action for the wrongful death of plaintiff's decedent, John A. Zrust. Spencer contends that the jury instruction concerning the extent of Spencer's duty toward Zrust was contrary to Nebraska law, and that the district court should have allowed the jury to consider its defense that Zrust assumed the risk of his work place. We reject these contentions for the reasons set forth in this opinion and, therefore, we affirm the judgment of the district court.
 
 
 2
 I. Background.
 
 
 3
 John Zrust, an employee of Per Mar Security and Research Corporation (Per Mar), died after a truck ran over him while he worked as a security guard at Spencer's meatpacking plant in Colfax County, Nebraska. The guardhouse at the Spencer plant stands at the exit to the plant, and the security guards are responsible for checking each truck loaded with meat before it leaves the premises. Specifically, the guards record and adjust the readings of the thermostat and temperature control for the refrigerated trailer, check the seals on the back and on the passenger side of the trailer, and transmit information from the truck's bill of lading and checkout to a log book.
 
 
 4
 Zrust was run over and killed on January 13, 1978, during his inspection of a truck driven by Donald Mathis. Mathis apparently started his truck forward while Zrust was reading or adjusting the thermostat and temperature control for the trailer. Because these are located behind the cab and in front of the trailer, Mathis did not see Zrust during this part of the procedure. Plaintiff, as Zrust's representative, obtained a verdict against Spencer, Mathis, and the lessor of Mathis' truck. Only Spencer appealed from the district court judgment entered pursuant to the jury verdict.
 
 
 5
 The parties agreed that Zrust was a business invitee of Spencer because he served as an employee of the independent contractor (Per Mar) hired by Spencer to furnish security services.
 
 
 6
 At trial, plaintiff portrayed Spencer's alleged negligence as a failure to provide Zrust with a safe place to work. Plaintiff argued that the particular danger leading to Zrust's death was not open and obvious. Even if it were obvious, plaintiff, Mrs. Zrust, contended that Spencer negligently failed to furnish an electric barrier, controlled from within the guardhouse, to insure that the truck remained motionless during the checkout procedure. Plants comparable to the Spencer plant commonly had such automatic barriers as safety devices. Instead, the Spencer plant had a manual gate that was not controllable from a place of safety because the guard had to leave the guardhouse in order to move the gate in front of a truck. The Per Mar guards customarily used this gate only at night for plant security, not as a barrier for the trucks.
 
 
 7
 Spencer argued that the danger at the plant was open and obvious, precluding its liability for any resulting injuries. In addition, Spencer argued that its supervisor's general warning to the guards of the danger of working around trucks satisfied its duty of care.
 
 
 8
 On appeal Spencer contends that the district court should not have read the second paragraph of jury instruction 13A concerning the extent of a property owner's duty to provide an invitee with a safe place to work,[2] and that it should have instructed the jury on Spencer's theory that Zrust assumed the risk.[3]
 
 
 9
 II. Discussion.
 
 
 10
 A. Spencer's Duty.
 
 
 11
 Plaintiff charged Spencer with failing to provide Zrust a safe place to work by not furnishing the type of safety device commonly used at other plants. Nebraska law clearly requires Spencer, as an owner in control of its premises, to keep those premises in a reasonably safe condition for the protection of business invitees such as Zrust. See Simon v. Omaha Public Power District, 189 Neb. 183, 191, 202 N.W.2d 157, 163 (1972).[4] Spencer does not deny that a Nebraska landowner owes some duty of care to an invitee, but maintains that the second paragraph of instruction 13A misstates Nebraska law. Because the danger imposed to security guards at the plant was open and obvious, Spencer contends that it owed no duty under Nebraska law to protect Zrust from hazards Zrust should have apprehended himself.
 
 
 12
 Spencer offers a series of Nebraska cases setting forth the rule embodied in the first paragraph of instruction 13A to support its contention that the court should have instructed the jury that a landowner has no duty to correct open and obvious dangers. The trial court distinguished those cases because the Nebraska Supreme Court had not considered in any of them a situation in which it would have been unreasonable to expect an invitee to protect himself despite the obviousness of the danger. Judge Lay, the trial judge, concluded that the Nebraska Supreme Court, if faced with an analogous case, would follow the rule suggested in section 343A of the Restatement (Second) of Torts, that a landowner may be responsible for open and obvious dangers if an invitee could not adequately protect against them.[5]
 
 
 13
 Although the trial judge's interpretation of state law does not bind this court, that interpretation deserves great weight. See J. B. Kramer Grocery Co. v. Glens Falls Insurance Co., 497 F.2d 709, 712 n.6 (8th Cir. 1974); Owens v. Children's Memorial Hospital, 480 F.2d 465, 467 n.3 (8th Cir. 1973). After careful consideration of the Nebraska cases addressing a landowner's duty to protect an invitee against open and obvious dangers, we conclude that instruction 13A is not inconsistent with Nebraska law.
 
 
 14
 First, many of the cases cited by Spencer do not apply because they involve "slip and fall" suits by an invitee against a business landowner.[6] The defendants in these cases were not responsible for injuries to their respective invitees because each invitee should have perceived the obvious danger of slippery conditions and protected against it as well as the landowner. The landowner, therefore, bore no responsibility to anticipate the harm and prevent it. These cases do not foreclose the rule, suggested in instruction 13A, holding the landowner responsible for open and obvious dangers when the invitee cannot reasonably be expected to protect himself. Nor do they touch upon a landowner's duty to provide a safe place to work.
 
 
 15
 The rule set out in instruction 13A also comports with Nebraska case law establishing the duty to provide a safe place to work. Although the Nebraska Supreme Court has held that defendant landowners owe no duty to employees of an independent contractor for open and obvious dangers, its reasoning suggests only that the owner need not protect an invitee against hazards "so apparent that he (the invitee) may reasonably be expected to discover them and protect himself." Laaker v. Hartman, 186 Neb. 774, 776, 186 N.W.2d 494, 496 (1971) (quoting Costello v. Simon, 180 Neb. 35, 141 N.W.2d 412 (1966) (owner not liable for injuries sustained by independent contractor's employee when ladder tipped sideways)). Like the slip and fall cases, the cases exemplified by Laaker v. Hartman do not consider a situation in which it is unreasonable to expect an invitee to protect himself against an apparent danger.
 
 
 16
 In Simon v. Omaha Public Power District, supra, the Nebraska Supreme Court distinguished between situations in which the invitee can better anticipate and protect against injury from those in which the landowner can better anticipate and protect against injury despite the obviousness of a danger. The plaintiff in Simon, an employee of an independent contractor, fell through an opening in the floor of a building under construction and sustained serious injuries. After noting that a landowner's duty "does not ordinarily encompass" known or obvious dangers, the Simon majority held that "a safe place to work requires that the owner * * * should recognize that the work is likely to create * * * a peculiar risk of physical harm to others unless special precautions are taken." 202 N.W.2d at 164 (emphasis in original).
 
 
 17
 Two justices in Simon dissented on the ground that Laaker v. Hartman, supra, required a verdict for the defendant because of the "plainly visible" danger. Id. at 171 (Spencer and Boslaugh, JJ., dissenting). The majority, however, refused to apply the rule of Laaker v. Hartman when the landowner should have anticipated the harm that could result from an open and obvious danger.
 
 
 18
 In accord with instruction 13A, these Nebraska cases suggest that an owner may be responsible for an obvious danger if it is unreasonable to expect the invitee to protect himself. Instruction 13A relies on section 343A of the Restatement (Second) of Torts.[7] Considering the Nebraska Supreme Court's frequent reliance on the Restatement of Torts in the past,[8] we cannot say that instruction 13A represented an erroneous view of Nebraska law.
 
 
 19
 B. Assumption of Risk.
 
 
 20
 In Nebraska the defenses of assumption of risk and contributory negligence[9] differ. Assumption of risk rests on contract principles while contributory negligence sounds in tort. See Schwab v. Allou Corp., 177 Neb. 342, 351, 128 N.W.2d 835, 841 (1964) (citing Landrum v. Roddy, 143 Neb. 934, 12 N.W.2d 82 (1943)). Both defenses, however, may be available in the same factual situation. See Schwab v. Allou Corp., supra, 128 N.W.2d at 841; O'Brien v. Anderson, 177 Neb. 635, 646, 130 N.W.2d 560, 567 (1964); Landrum v. Roddy, supra, 12 N.W.2d at 89. The assumption of the risk doctrine applies to known dangers, necessary and obvious risks, but not to situations in which only a possibility of danger exists. Hickman v. Parks Construction Co., 162 Neb. 461, 472, 76 N.W.2d 403, 411 (1956); McCullough v. Omaha Coliseum Corp., 144 Neb. 92, 99, 12 N.W.2d 639, 643 (1944). A plaintiff does not assume the risk of a hidden danger. See Darnell v. Panhandle Cooperative Ass'n, 175 Neb. 40, 52, 120 N.W.2d 278, 287 (1963). See generally Comment, Nebraska Jury Instructions 3.31, at 84 (1939).
 
 
 21
 As the Nebraska Supreme Court in Schwab remarked, "(a)ssumption of risk is predicated upon an implied consent to be treated negligently." 128 N.W.2d at 841. The defendant must prove the two essential elements of the assumption of risk defense: that the plaintiff actually knew of the danger, and voluntarily exposed himself to it. See Hurlbut v. Landgren, 200 Neb. 413, 418, 264 N.W.2d 174, 177 (1978); Garcia v. Howard, 200 Neb. 57, 61, 262 N.W.2d 190, 193 (1978). The difference between assumption of risk and contributory negligence is emphasized in an optional instruction included in the compilations of approved instructions for use in Nebraska:
 
 
 22
 The defense of assumption of risk involves a choice made more or less deliberately and negatives liability without reference to the fact that the plaintiff may have acted with due care, where as the defense of contributory negligence involves a failure to exercise due care. The former relates to a mental state of willingness, while the latter relates to conduct. (Nebraska Jury Instruction 3.31 (1939).)
 
 
 23
 In considering Spencer's argument that the trial court should have given an instruction on assumption of the risk, we must examine the conflicting testimony about the events surrounding the accident. The jury might have determined from the evidence that Zrust died while making a routine inspection of the truck driven by Mathis. The evidence supporting this theory includes the location of Zrust's body under the left rear wheels of the tractor, that the deceased still clutched in his hand the bill of lading needed by the truckdriver to proceed on his journey, and the absence of the entry in the guard's log book indicating that Zrust had not completed his inspection of Mathis' truck.
 
 
 24
 The defendants offered contrary testimony indicating that Zrust voluntarily entered a place of danger by attempting to inspect the temperature controls of the truck after signalling Mathis that he had completed the inspection. According to Mathis, Zrust had returned the documents pertaining to the load, stepped out of danger, and waved Mathis forward, thus indicating that the inspection was completed.[10]
 
 
 25
 The testimony demonstrated that Per Mar security guards and all the truckdrivers knew that no truck could leave the premises until the guard returned the bill of lading to the driver. The evidence also indicated that the truckdrivers, including Mathis, knew the guard's procedures. Following ordinary inspection procedures would not give rise to an assumption of risk defense against security guard Zrust because Zrust would not anticipate movement of the truck until completion of the inspection.
 
 
 26
 Mathis' testimony, if believed by the jury, however, indicates that the deceased left his place of safety and entered a place of danger near the truck after signalling Mathis that he should proceed. We believe that the Nebraska Supreme Court's discussion of assumption of risk in Garcia v. Howard, supra, would have justified an instruction on assumption of risk in this case. The Nebraska court said:
 
 
 27
 In the present case, the plaintiff (Garcia) voluntarily crouched between two parked vehicles on a public street for a substantial period of time, apparently oblivious to surrounding events. He did not, despite his obviously precarious position, notice the defendant getting into his automobile, starting it, running the motor for 15 seconds, and beginning to back the car in the parking space. Plaintiff was aware that defendant's car was parked immediately in front of his car, and that ordinarily cars must be backed in order to leave a parallel parking space. There can be no question in this case that the plaintiff placed himself in a position of obvious danger when he knew or should have known that substantial injury was likely to result if the defendant returned and backed his car to leave his parking space. This is a case where the defenses of contributory negligence and assumption of risk overlap. See Prosser, Law of Torts, § 78, p. 441 (4th Ed., 1971). Under either theory, plaintiff was barred from recovery as a matter of law under the evidence he presented. (Garcia v. Howard, supra, 262 N.W.2d at 193.)
 
 
 28
 Although the trial court should have given an instruction on assumption of the risk, our review of the record establishes that the failure to give the instruction amounted to harmless error in light of the issues presented to the jury.
 
 
 29
 First, the trial court submitted to the jury the question of Mr. Zrust's contributory negligence in leaving a place of safety and placing himself in a position of peril. The jury likely rejected this defense in rendering a plaintiff's verdict, but we cannot conclusively assume this rejection because of Nebraska's comparative negligence doctrine. See note 9 supra.
 
 
 30
 More importantly, however, the trial court presented the conflict in the evidence and inferences that might have given rise to the assumption of risk doctrine, while instructing the jury concerning Mathis' possible negligence. The relevant part of instruction 12 states:
 
 
 31
 In the present case the plaintiff alleges that on January 18, 1978, the defendant, Donald William Mathis, drove his vehicle into the exit gate at the Spencer Foods Plant to allow a security check of the seals and temperature of the reefer unit by the gate guard, John A. Zrust. Plaintiff alleges that Mathis started his vehicle forward at a time that Zrust was in close proximity of the vehicle; you are instructed if Mathis started his vehicle, when he knew or should have known that Zrust was still inspecting his vehicle or while in close proximately to it, then you may consider this as evidence of Mathis' negligence. On the other hand, if you find Mathis reasonably assumed that Zrust had finished his inspection, had given him permission to leave, and had moved to a place of safety, under those circumstances it would not be evidence of negligence for Mathis to move his tractor-trailer unit.
 
 
 32
 In finding Mathis negligent by applying instruction No. 12 to the facts, the jury necessarily rejected defendant's theory that Zrust had given a wave of the hand or arm, directing the driver to proceed, and thereafter entered the zone of danger knowing that the truck would move forward. In this case, therefore, the rejection of those facts that would have absolved the truckdriver of negligent conduct demonstrates that the jury decided those facts that would have warranted an instruction on assumption of the risk adversely to defendants, including appellant Spencer. In light of this jury determination, the trial court's failure to instruct the jury on assumption of the risk amounts to harmless error.
 
 
 33
 Affirmed. Each party will bear its own costs herein.
 
 
 
 *
 EARL R. LARSON, United States Senior District Judge, District of Minnesota, sitting by designation
 
 
 [1]
 The Honorable Donald P. Lay, Chief Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [2]
 Instruction 13A states:
 While the owner of premises owes a person invited by the landowner to perform work on the premises the duty to exercise ordinary care to have the premises in a reasonably safe condition for use in a manner consonant with the purposes of the employment, generally, there is no duty on the part of an owner to protect an invitee against hazards which are known to the invitee or are so apparent that he may reasonably be expected to discover them and protect himself.
 Where dangers are unreasonable, their obviousness, standing alone, however, does not necessarily relieve a landowner of all responsibility for their presence. Although the person working on the premises may be under a duty to avoid harm likely to result to him from open and obvious dangers, he may not be in a position fully to appreciate the risk or to avoid the danger even though aware of it. For instance, his attention may be distracted or the duties of his employment may require his unavoidable exposure to it. In such circumstances, you should consider whether the landowner is the person best able to anticipate and prevent harm from the obvious dangers on the premises under his control and whether under such circumstances the landowner is under some duty to take corrective action.
 
 
 [3]
 Spencer raises two other issues, both of which lack substantial merit. First, Spencer argues that Mathis' negligence was the proximate cause of Zrust's death and that Spencer's actions at most created a mere condition for the accident. Second, Spencer contends that Zrust should have been found contributorily negligent as a matter of law. The district court correctly held that both proximate cause and contributory negligence were questions for the jury. Because the district court adequately defined both issues and submitted them to the jury, Spencer's challenges fail
 
 
 [4]
 The Nebraska Supreme Court has expressly held that "the safe place to work" rule applies to an invitee employed by an independent contractor as well as to an employee. See Simon v. Omaha Public Power District, supra, 202 N.W.2d at 163
 
 
 [5]
 Section 343A(1) and comment f state:
 § 343A. Known or Obvious Dangers
 (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.
 (2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.
 f. There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm. (Restatement (Second) of Torts § 343A & comment f (1965).)
 
 
 [6]
 See, e.g., Syas v. Nebraska Methodist Hospital Foundation, 209 Neb. 201, 307 N.W.2d 112 (1981) (no duty owed to plaintiff who fell on ice in defendant's parking lot because of obvious hazard); Collins v. Herman Nut & Supply Co., 195 Neb. 665, 240 N.W.2d 32 (1976) (no liability to delivery man who slipped on snow he himself had tracked into defendant's building); Crawford v. Soennichsen, 175 Neb. 87, 120 N.W.2d 578 (1963) (no liability to customer for injuries incurred from fall on ice in store parking lot)
 
 
 [7]
 Prosser also approved this general rule and its qualification. See Prosser, Law of Torts, § 61, at 394 (4th ed. 1971)
 
 
 [8]
 Many of the cases cited by Spencer use various sections of the Restatement of Torts for authority. See Simon v. Omaha Public Power District, supra, 202 N.W.2d at 164-65, 169; Syas v. Nebraska Methodist Hospital Foundation, supra, 307 N.W.2d at 114
 
 
 [9]
 The plaintiff's contributory negligence operates as a bar to recovery if it is more than slight when compared to the acts or omissions of the defendant. Neb.Rev.Stat. § 25-1151 (1979). Assumption of risk constitutes an absolute bar to recovery. See H. Woods, Comparative Fault § 6:6, at 140 (1978)
 
 
 [10]
 The record includes evidence justifying the jury's rejection of this testimony. Mathis testified in his pretrial deposition that the deceased handed him the bill of lading for the cargo in the truck, but other trial testimony proved this assertion untrue. Richard Kruse, the county sheriff who investigated the accident, produced at trial for the first time remnants of the original bill of lading. Kruse testified that he had obtained the torn document from the hand of the deceased. Therefore, the jury could have rejected the Mathis testimony as less than truthful, and that of a supporting witness, Gaylord Surrath, as unreliable because his view of the accident from a substantial distance was obstructed by intervening truck traffic