**BUSINESS DEVELOPMENT CORPO-RATION OF GEORGIA, INC.,**
Plaintiff-Appellant,

v.

**HARTFORD FIRE INSURANCE COMPANY, Defendant-Appellee.**

No. 83–8892.

United States Court of Appeals,
Eleventh Circuit.

Nov. 27, 1984.

Walter G. Elliott, Jr., Franklin R. Nix, Atlanta, Ga., for plaintiff-appellant.

Malcolm P. Smith, Atlanta, Ga., for defendant-appellee.

Before RONEY and ANDERSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

R. LAINIER ANDERSON, III, Circuit Judge:

In this diversity action, cross-motions for summary judgment were filed, and the district court ruled in favor of the insurer. We reverse and remand for further proceedings.

I.

Appellant Business Development Corporation of Georgia, Inc. ("BDC") loaned $100,000 to Chatsworth Rubber Products, Inc. ("Chatsworth"), and took a security interest in certain equipment and other personalty owned by Chatsworth. At the time of the loan, Chatsworth obtained an insurance policy from appellee Hartford Fire Insurance Co. ("Hartford") to cover the collateral for BDC's loan.

BDC acquired the collateral at a foreclosure sale, and took possession of the insured property on January 8, 1982. Hartford mailed to BDC a notice of cancellation of the policy, the notice being dated January 11, 1982. The notice provided that cancellation would be effective ten days after its receipt. The deposition testimony does not conclusively establish the date on which BDC received notice of cancellation.[1]

The insured property was destroyed by fire on January 27 and 28, 1982. BDC gave notice of the fire to Hartford and made a claim for the proceeds of the policy of insurance in a letter dated June 8, 1982. Hartford denied the claim on the basis of the January 8 foreclosure sale, the January 11 notice of cancellation, and BDC's failure to give immediate written notice of the loss.

BDC filed suit against Hartford in a Georgia state court, and the action was removed to the United States District Court for the Northern District of Georgia.

---

1. There appears to be no dispute that the notice was dated January 11, 1982, and that it had a reception date stamped in the upper lefthand corner of January 20, 1982. There was testimony, however, that the notice was originally directed to Chatsworth's accountant and not to BDC. Furthermore, there was testimony that the notice of cancellation was not "located" until the first week in June of 1982.

Hartford subsequently moved for summary judgment, and BDC moved for partial summary judgment as to liability. In its order of October 7, 1983, the district court granted Hartford's motion for summary judgment. The district court based its ruling on the conclusion that BDC was a "loss payee," with rights no greater than those of the owner-mortgagor, that BDC was not a "mortgagee" under the policy, and that consequently when the insured lost its interest in the property upon foreclosure, BDC lost any right it had to recover under the policy.

### II.

BDC has raised two broad issues on appeal. First, under the terms of the policy, was BDC a mere "loss payee" with rights no greater than those of the owner-mortgagor, such that BDC's coverage would terminate upon foreclosure as did the coverage of the owner-mortgagor? Or, on the other hand, did BDC have rights greater than those of the owner-mortgagor such that the foreclosure did not terminate its coverage? Second, was BDC required to give notice of the loss, and if so, was reasonable notice given?

### A. *Loss Payee or Mortgagee*

The Georgia law on a lender's right to recover on a borrower's insurance policy covering his collateral is stated in *Decatur Federal Savings & Loan Ass'n v. York Ins. Co.*, 147 Ga.App. 797, 250 S.E.2d 524 (1978):

Insurance policies regularly have one of two sorts of mortgagee payment clauses. Where the loss is paid to the loss payee named as its interest may appear this constitutes a simple or open-mortgage clause under which the mortgagee is a mere appointee of the fund whose right of recovery is not greater than that of the mortgagor.... Conversely, where the loss payable clause contains language stipulating that, as to the mortgagee, the insurance shall not be invalidated by any act or neglect of the mortgagor or owner of the property, the effect of such language, referred to as the New York standard, or union mortgage clause is to create a separate and distinct contract on the mortgagee's interest and give to it an independent status.... Thus, under the standard clause, the mortgagee may frequently recover although the insured owner could not.

*Id.* 147 Ga.App. at 798, 250 S.E.2d 524 (citations omitted).

We must determine whether the policy provisions in the present case make BDC a "mortgagee" with rights greater than the owner-mortgagor or a mere "loss payee," with rights no greater than those of the mortgagor-owner. Three parts of the insurance policy bear on this question. First, the declarations page at item 7 provides a blank line entitled "Mortgagee." This line was filled in "See No. 520–G." The second pertinent part of the insurance policy is Clause 19, the "Mortgagee" clause.[2] As

---

**2.** Clause 19 provides, in part:

Mortgage Clause—Applicable Only To Buildings. This clause is effective if a mortgagee is named in the Declarations. The word "mortgagee" includes "trustee". Loss to buildings shall be payable to the named mortgagee as interest may appear, under all present or future mortgages on the buildings described in the Declarations in order of precedence of mortgages on them.

As it applies to the interest of any mortgagee designated in the Declarations, this insurance shall not be affected by any of the following:

(a) any act or neglect of the mortgagor or owner of the described buildings;

(b) any foreclosure or other proceedings or notice of sale relating to the property;

(c) any change in the title or ownership of the property;

(d) occupancy of the premises for purposes more hazardous than are permitted by this policy;

provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee shall, on demand, pay the premium.

The mortgagee shall notify the Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of the mortgagee. Unless permitted by this policy, such change of ownership or occupancy or increase of hazard shall be noted on the policy and the mortgagee shall on demand pay the premium for the in-

can be seen from the noted text of Clause 19, the clause takes effect if a mortgagee is named on the declarations page, and applies to a mortgagee so designated. The third part of the policy that bears on BDC's status is found in endorsement No. 520–G.[3] This endorsement is entitled the "Loss Payable Clause." BDC is listed in this clause by name and address.

Hartford argues that BDC cannot be a mortgagee because it is not listed by name on the declarations page of the policy. BDC argues to the contrary that the reference on the declarations page to endorsement 520–G clearly indicates that BDC is the intended mortgagee. We believe that BDC has correctly described the effect of the declarations page. BDC is the only entity named in the endorsement. The reference to 520–G can therefore be taken as a clear reference to BDC. If the parties had intended not to make BDC a mortgagee, they could have declined to name a mortgagee on the declarations page. The fact that BDC was named by reference rather than directly is not of compelling significance.

Appellee also argues that the mortgagee clause contained in ¶ 19 of the policy by its terms applies only to buildings. We are not inclined to construe ¶ 19 this narrowly, particularly in a policy that insures only personalty. *See J.B. Kramer Grocery Co. v. Glens Falls Ins. Co.*, 497 F.2d 709 (8th Cir.1974). While it is clear that the first paragraph of Clause 19 applies only to

buildings, it is not clear whether the restriction is intended to apply to the second paragraph as well, which provides that, as to any mortgagee named in the declarations, the insurance shall not be affected by any foreclosure. We do not consider it necessary, however, to determine the intended scope of this "buildings only" restriction because we find an adequate basis in the third relevant part of the contract, its Loss Payable Clause, to support appellant's contention that it was entitled to ten days' notice upon cancellation by Hartford.

■ The Loss Payable Clause is appended to the policy as endorsement No. 520–G.[4] Hartford argues that BDC's status is determined by the clause's language, which states that loss shall be payable to the lender "as interest may appear." Hartford argues that this language determines BDC's rights to be those only of a loss payee, *i.e.*, a mere appointee of the insurance funds with rights no greater than those of the owner-mortgagor. However, as BDC well argues, the Loss Payable Clause does not stop with the words "as interest may appear." The clause goes on to extend to BDC an independent right to ten days' notice upon cancellation. This second half of the Loss Payable Clause states that the insurance shall remain in force only for the benefit of the lender during the ten-day notice period. This affords BDC a right greater than that enjoyed by the principal insured under the policy.[5]

creased hazard for the term it existed under this policy. If such premium is not paid, this policy shall be null and void.

The Company reserves the right to cancel this policy at any time as provided by its terms. If so cancelled, this policy shall continue in force for the benefit only of the mortgagee for ten days after notice to the mortgagee of such cancellation and shall then cease. The Company shall have the right to cancel this agreement on ten days notice to the mortgage.

3. Endorsement 520–G states, in pertinent part:

LOSS PAYABLE CLAUSE

It is stipulated that loss under this policy shall be payable to

(Name)...THE BUSINESS DEVELOPMENT CORP. OF GA., INC.
(Mailing Address)....P O BOX 1029
(City and State) ...DALTON, CA.
as lender, as interest may appear.

This Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the lender for ten days after notice to the lender of such cancellation and shall then cease, and this Company shall have the right, on like notice, to cancel this agreement.

It is important that name and address of lender be included.

4. *See supra* note 3.

5. Indeed, Hartford's own conduct in sending BDC a cancellation notice indicates that it believed BDC was entitled to notice under the policy. As this court stated recently in *Allstate Ins. Co. v. Adana Mortgage Bankers, Inc.*, 725 F.2d 1324, 1327 (11th Cir.1984), "it does not lie in the mouth of [the insurer] to espouse a can-

Construing the contract as a whole, as required by Ga.Code Ann § 13–2–2(4) (1982), we are left with the firm conviction that the parties intended BDC not merely to stand in the shoes of the principal insured, but to enjoy independent rights, including the right to receive ten days' notice before its coverage would be ended. BDC has drawn the court's attention to documents in the record that further substantiate this conclusion, for example a covering notice that accompanied Hartford's delivery of the policy to BDC, and the notice of cancellation itself, both of which use the word "mortgagee." These documents provide further support for our conclusion that BDC was afforded the status of a mortgagee under the policy, with an independent right to notice before its coverage was terminated, and was not merely given the status of a loss payee.

Accordingly, we reverse the district court's ruling on this issue, which necessitates consideration of the other issues raised in the cross-motions for summary judgment.

### B. *Issues on Remand*

The district court did not reach the questions whether BDC was required by the policy to give notice of loss, whether failure to comply with the notice requirement would work a forfeiture of the policy proceeds, and whether if notice were required, BDC's notice in June after the fire in January complied with the policy's requirement. In addition, our decision concerning BDC's status as a mortgagee makes it necessary for the district court to determine the date on which BDC received notice of cancellation from Hartford in order to determine whether the policy was in effect at the time of the fire.

These remaining issues present questions both of fact and of law. These questions were not ruled upon by the district court, however, and were not addressed by the parties at oral argument. Accordingly, we remand the case to give the parties an opportunity to develop the record further,

if necessary, and to resubmit the questions to the district court for summary disposition, if appropriate, or otherwise for trial.

REVERSED and REMANDED.

cellation date earlier than ... the date specified in [the insurer's] own notice of cancellation."