Marietta DARLING, et al., Plaintiffs,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services, et al., Defendants.

No. 87–6067–CV–SJ–6.

United States District Court,
W.D. Missouri,
St. Joseph Division.

May 12, 1988.

Pamela L. Cone, Legal Aid of Western Mo., St. Joseph, Mo., Roger A. Schwartz, National Health Law Program, Washington, D.C., Eugenie Denise Mitchell, Gill De-Ford, Los Angeles, Cal., for plaintiffs.

William L. Webster by Robert Presson, Asst. Atty. Gen., Jefferson City, Mo., E. Eugene Harrison, Asst. U.S. Atty., Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER

SACHS, District Judge.

Plaintiff Darling, a widow of a Social Security covered wage-earner, has special income entitlement as a disabled widow, by reason of her considerable medical disabilities. Defendants are the Secretary of the Department of Health and Human Services (Secretary), the Health Care Financing Administration (HCFA, a branch of HHS), and the Director of the Department of Social Services of the State of Missouri (Director). At issue on cross-motions for summary

judgment is the Medicaid entitlement of plaintiff and others similarly situated which has been placed in question by reason of Congressional action increasing in 1984 the Federal payments to hér as a disabled widow (and creating periodic cost of living increases). Congress subsequently provided in 1986 that such increases should not be counted, for Medicaid entitlement purposes, as a factor disqualifying a person from receiving Supplemental Security Income (SSI) even though in fact the increases do push a recipient over the level for entitlement to such low income payments. The disabled widow(er)s[1] are "deemed" to have SSI benefits for Medicaid purposes if they would be SSI eligible without the increase. Congress required, however, that a Medicaid claimant make application for protection of his or her Medicaid entitlement. 42 U.S.C. § 1383c(b)(1) and (3) (§ 12202(a) of Pub.L. 99–272, the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA)). The parties dispute whether the COBRA relief was comprehensive and nationwide. No material facts are in dispute.

Plaintiff contends that Congress must have intended that the income increases provided by it be disregarded nationwide in administering the Medicaid programs, as demonstrated by the requirement that *each* state be notified of the names of affected individuals and the further requirement that *each* state promptly notify all individuals who may qualify for medical assistance under a state Medicaid plan of their right to make application for such assistance. Section 12202(b) of Pub.L. 99–272. Congress also described plaintiff and others similarly situated as "eligible" persons under the corrective law. 42 U.S.C. § 1383c(b)(2).

Defendants contend that Congress did not offer nationwide protection from the adverse Medicaid effects of its increases in the Federal payments to disabled widow(er)s because the protection only relates to Medicaid entitlement triggered by SSI entitlement. Fourteen states, including Missouri, have opted out of using SSI entitlement as such as a triggering factor for Medicaid, and have their own plans, approved by Federal officials, for Medicaid entitlement. Treating Medicaid claimants as though they had SSI entitlement makes no difference in such states, according to defendants. The states with their own Medicaid entitlement plans, unrelated specifically to SSI entitlement, are known as "209(b)" states. *See Savage v. Toan,* 795 F.2d 643 (8th Cir.1986), cases cited therein, and 42 U.S.C. § 1396a(f).

## I.

■ The first issue presented is class certification. Relief having been granted for Illinois residents in a companion case that will be discussed, plaintiff seeks certification of a class of eligible disabled widows and widowers (defined in 42 U.S.C. § 1383c(b)(2)) who reside in Missouri and the twelve other 209(b) states (omitting Illinois) who have been or may be harmed in determining Medicaid eligibility by the Secretary's position, previously transmitted to such states, that the 209(b) states have the option but not the duty to disregard the pertinent increases in Social Security benefits. She seeks subclass certification for Missouri residents in such status. The eligible Missourians may have a special claim to relief in that while SSI *entitlement* as such is not a factor in determining benefits under the Missouri Medicaid plan, SSI entitlement *income* is the controlling income factor under that plan.[2] Another subclass, included within the former category and including the latter, would be such eligible disabled widowed persons who are residents of Missouri and all other 209(b) states that use SSI entitlement income as

---

1. As a practical matter the claimants are almost exclusively widows, although a few widowers are in the program.

2. Missouri's classification as a 209(b) state rather than an SSI state is derived from its retaining and exercising the right to have a category of eligibility as to the permissible assets (resources) of Medicaid recipients that is more restrictive than SSI eligibility as to resources. Missouri has elected not to use a lower income standard than that required for the Federal SSI program.

the controlling income factor under their Medicaid plans.[3]

Procedurally this case bears resemblance to *Linquist v. Bowen,* 633 F.Supp. 846 (W.D.Mo.1986), *affirmed,* 813 F.2d 884 (8th Cir.1987), where Judge Bartlett created a nationwide class of Social Security claimants in litigation in which counsel for this plaintiff served as counsel. Rule 23(b)(2) certification is deemed appropriate here, as in that case. Adequacy of representation is the same; moreover, the court is favorably impressed by the quality of work already done in this case, and by oral argument. Plaintiff's claim is typical of the claims that she wishes to present. Common questions of law control the rights of all persons in the class, even though state plans may vary in 209(b) states. The question presented focuses on Federal rather than state law, although the impact of the court's ruling may vary.

Defendants argue that there is a defect in parties for a multi-state class, in that only the Missouri state agency is before the court (in addition to Federal defendants). The same procedure was used, however, in *Lynch v. Rank,* 604 F.Supp. 30 (N.D.Cal.1984), *affirmed,* 747 F.2d 528 (9th Cir.1984). The basic contention is that the Secretary has misconstrued Congressional action and has supplied unsound direction to the 209(b) states. As in *Lynch v. Rank,* this appears to be a problem that can be dealt with in the absence of representation from each state.

There are approximately 950 eligible widows and widowers in 209(b) states (other than Illinois) who receive the disabled widow payments and who have lost SSI entitlement. Some 127 such persons live in Missouri, and about 578 live in seven states that have opted not to protect them from the adverse Medicaid effects of the increased Federal payments in question.[4] These numbers are all more than adequate to satisfy the numerosity requirement for class treatment under Rule 23(a)(1), F.R. Civ.Proc. It would certainly not be feasible to require joinder of each affected individual. Even if only 30 or 40 persons were involved, considering the fact that they are geographically scattered, physically disabled, elderly and impoverished and doubtless in many instances lacking skills in literacy and understanding of the complex legal issues presented, and considering further that speedy determination of their rights is much to be desired, a class would be certified. Under the circumstances of this case I believe I have complied with the admonition that I "take care" to ensure that multi-state treatment is appropriate. *Califano v. Yamasaki,* 442 U.S. 682, 702, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979).[5]

The above described class and two subclasses will be certified.

## II.

Turning to the merits of the pending cross-motions for summary judgment, the reader needs familiarity with the so-called 209(b) option, allowing states to develop Medicaid plans that are not automatically dependent on a recipient's SSI entitlement. *See Schweiker v. Gray Panthers,* 453 U.S. 34, 38–9, 101 S.Ct. 2633, 2637–38, 69 L.Ed. 2d 460 (1981). The details of the increased

---

3. The court does not find such a list of states in the filings in this case or in the briefing. A general descriptive classification may serve current purposes, however, and any indefiniteness can doubtless be cured prior to formulating any final order that may be authorized.

4. The pertinent seven states are Indiana, Missouri, Nebraska, New Hampshire, North Dakota, Ohio and Utah. Three of these states are in the Eighth Circuit. Illinois, as noted, has been ordered to give the protection here sought, and Connecticut, Hawaii, Minnesota, North Carolina, Oklahoma and Virginia elected to give protection, after being advised by the Secretary that they had the option to do so.

5. There is indeed authority to the effect that class certification is not necessary because I would have the option to grant injunctive relief effectively benefitting a considerable class simply by omitting to artificially restrict relief to a named plaintiff. *Ihrke v. Northern States Power Company,* 459 F.2d 566 (8th Cir.1972), *judgment vacated on other grounds,* 409 U.S. 815 (1972); *Collins v. Marshall,* 507 F.Supp. 83 (W.D.Mo. 1981), *rev'd. on other grounds,* 661 F.2d 705. Where, as here, the parties are prepared to deal with the class action question, and the question can be timely ruled, more cautious treatment is probably desirable.

benefits authorized in 1983 for the special class of beneficiaries of disabled widow(er)'s benefits need not be elaborated. Such increases occurred in January 1984. The additional payments so authorized, together with future cost of living increases, served to disqualify some of the recipients from SSI entitlement. In most of the states, this automatically deprived the group of Medicaid, absent a "spend-down" for medical purposes to the level of SSI entitlement. The "spend-down" terminology is similar to more familiar "deductibles" in the insurance loss context. Because we are dealing with deeply impoverished persons (the SSI entitlement level being $336 per month in 1986 and $340 per month in 1987) any significant spend-down requirement tends to cause abandonment of needed medication and medical treatment or forces needy persons to rely on private charity.

Some years ago a similar adverse Medicaid effect of an increase in Social Security payments was corrected by legislation known as the Pickle Amendment. Litigation in California, an SSI state, resulted in a construction favoring the recipients. *Lynch v. Rank supra*, 604 F.Supp. 30.

Congress sought in 1986 to correct the adverse effect of the 1984 Social Security increases for the group in question. 42 U.S.C. § 1383c, Pub.L. 99–272, § 12202(a) and (b). Without reciting all the difficult phrasing and cross-referencing in this legislation, an attempt will be made to summarize noncontroversial portions and to quote the few pertinent words that are in controversy. *Medicaid entitlement relief was to be offered to each "eligible widow or widower,"* defined as persons who were entitled to the disabled widow(er)'s benefits and who lost SSI entitlement because of the increases in such benefits in 1984. 42 U.S.C. § 1383c(b)(2). Such eligible widow(er)s "shall be deemed" for Medicaid purposes to be individuals "with respect to whom (SSI) benefits ... are paid ..." if they have made timely application for protection, remain eligible for the disabled widow(er)'s benefits and "would be eligible for (SSI) benefits" if the pertinent increases in widow(er)'s benefits "were disregarded." 42 U.S.C. § 1383c(b)(1) and (3).

The Secretary was directed to supply to each state the names of persons classified as disabled widow(er)s under the Social Security program who might be eligible for Medicaid relief and each state was required to "promptly notify" such persons of their right to make application for such assistance. Sec. 12202(b) of Pub.L. 99–272, appended to 42 U.S.C.A. § 1383c. While this wording is not entirely consistent with the terms used in § 12202(a), it apparently means that the Secretary and the states were required to notify and assist all designated "eligible" persons who might need to make a "written application for protection" under the remedial legislation.

A fifteen month period was initially allowed for seeking protection; this period has been extended for twelve additional months and will expire on July 1, 1988. If the court should conclude that appropriate notices have not been given by the Secretary or the states, however, counsel for the Federal defendants advised at oral argument of the pending summary judgment motions that they would consider that the July 1, 1988, deadline was not binding, in the absence of the prompt notification required by the statute. While this would undoubtedly be true of the initial fifteen month period that was joined by Congress with the prompt notification requirement, it seems arguable that the subsequent twelve month extension was intended to be final. The interpretation given by the Federal authorities to the actions of Congress will be accepted, however.

By Transmittal No. IM 86–2 in July 1986, HCFA notified the states that lists of names of affected individuals would be supplied, implementing § 12202 of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA). The states were advised that

> Section 12202 provides for the preservation of categorical Medicaid eligibility for those disabled widows and widowers whose disabled widow's and widower's benefits were increased as a result of the

elimination of the reduction factor required by Section 134 of P.L. 9821, and who would be eligible for Supplemental Security Income (SSI) and/or optional State supplement (SSP) had there not been the elimination of the reduction factor and subsequent cost of living adjustments.

Doc. 37, p. 76. The transmittal contained a section specifically directed to eligibility in 209(b) states which provides that

> because eligibility for SSI/SSP benefits does not necessarily guarantee eligibility for Medicaid in a 209(b) State, such States may not be required to provide Medicaid to individuals solely because they meet these criteria. Assuming the individual meets all [other] criteria, the State may elect to disregard all or any part of the amount by which the individual's benefit increased, as well as subsequent cost-of-living (COLA) increases, in determining whether he or she is eligible for Medicaid as categorically needy.

Doc. 37, p. 80. This directive by HCFA is the immediate source of the present controversy. As indicated, seven states, including Missouri, have accepted the option offered by HCFA not to disregard the increased widow(er)'s benefits in determining Medicaid eligibility.

Plaintiff Darling's affidavit (to which the Director takes minor exception, but which will be treated as illustrative) recites that her disabled widow's benefit increased in 1984 from $277 per month to $389.60 per month. SSI benefits, amounting to $57 per month, were terminated as a result of her increased income. Because her income passed the figure for eligibility for Medicaid, she must now "spend down" $192 per *quarter* before being eligible for such assistance.[6] She estimates the cost of prescription medications and treatments, which she now cannot afford to purchase, at $196 per *month*. Ms. Darling is 63 years old, a widow, with numerous serious physical problems.

■ The central question of interpretation is whether, when Congress provided for a disregard of the eligible disabled widow(er)'s increases in benefits, so that such person should be "deemed" for Medicaid purposes to be a person to whom SSI "benefits ... are paid" it meant (1) simply to benefit such widows and widowers in SSI states, where SSI benefits automatically result in Medicaid entitlement or (2) to benefit eligible widows and widowers in all states, by requiring that they be "deemed" to be receiving *income qualifying for SSI benefits*. If the latter interpretation is used, disregarding the increased income in question, widows and widowers in 209(b) states like Missouri that use the same income qualifier as is used for SSI would be fully entitled to Medicaid as though they were living in SSI states. Widows and widowers in 209(b) states that may have a Medicaid plan with a lower income cut-off than the SSI income level would be partially benefitted by the latter interpretation, in that their spend-down requirements would be from the SSI income level rather than from the higher level that the increased payments actually achieve.

It is my conclusion that defendants offer a more plausible literal meaning of the controlling language but that plaintiff offers a much more plausible statement of Congressional intent, given the full context of § 12202 and the absence of any reasonable basis for Congress to discriminate in favor of widows and widowers in SSI states. While the "words used do not formally quite match" my reading of Congressional intent, I conclude that I should not "wince at carrying out that purpose." To accept defendants' contention would be to demonstrate "over solicitude for the letter" of the statute. *Federal Deposit Ins. Corp. v. Tremaine*, 133 F.2d 827, 830 (2d Cir. 1943) (L. Hand, C.J.).[7]

---

**6.** The Federal defendants, at oral argument, supplied another example of the problem, noting that plaintiff's monthly income is now $421 and contending that her spend-down requirement is $67 monthly or $201 quarterly.

**7.** Judge Hand's principles for statutory construction are repeated in *District 2 Marine Engineers Beneficial Ass'n. v. Grand Bassa Tankers, Inc.*, 663 F.2d 392, 395 (2d Cir.1981) (Mansfield, J.), and were nicely reformulated by Judge Friendly in *J.C. Penney Co. v. Commissioner of*

Defendants principally rely on a "plain meaning" theory of the language of the pertinent statutes and the structure of the various programs. They cite a closely parallel situation where Congress in 1980 sought to protect Medicaid eligibility for persons whose earned income made them ineligible for SSI benefits. Congress initially simply provided that such earned income should not be deemed, for Medicaid purposes, a disqualifier for SSI benefits. When it was contended that the protection was inadequate, because it did not apply to 209(b) states, Congress in 1986 specifically provided that the earned income not disqualify Medicaid claimants in such states. 42 U.S.C. § 1382h(b)(3). *See* 1986 USCCAN 6096 (Senate Report).

Plaintiffs make their own argument from the language of the existing statutes and further rely on a ruling by District Judge Beatty in *Hill v. Duffy,* No. 87–5208 (S.D.Ill. July 31, 1987), CCH Medicare & Medicaid Guide, ¶ 36,817 at p. 16,100. In that case, Judge Beatty relied heavily on the requirement of notice in *all* states to conclude that Congress must have intended that no Medicaid claimant in any state should be penalized by reason of the income enhancing provisions granted to disabled widow(er)s. He also relied on the terms of the Illinois plan, under which Medicaid entitlement was linked to State Supplemental Payments (SSP) eligibility. The Federal law requires that SSP recipients be "deemed" to be such recipients even when they actually lose such payments by reason of the Federal payments that began in 1984.

On the question of likely Congressional intent, it is extremely difficult to disagree with plaintiff. The only imaginable policy argument against uniform treatment of the Federal funds newly offered to Medicaid recipients is a federalism contention that, consistent with 209(b), all states should have an option to be less generous in setting qualifications than the national standard. This conceivable theory lacks substance or plausibility in the present context and is not developed by defendants. The hand that offered additional funds simply restricted the adverse side-effects of such funds. No persons were entitled to Medicaid who had not already been qualified by the state plans. No additional financial burden was placed on the states. It was unnecessary to reinforce the 209(b) option, because there was no realistic likelihood that states would withdraw from Medicaid simply because a small group of disabled widows would be kept on the Medicaid rolls, as originally *allowed* by the states.

The Congress that acted to preserve the rights of Medicaid claimants in 209(b) states when the earned income issue was dealt with in 1986 can hardly have intended to give disabled widow(er)s less favorable treatment. In fact it defined plaintiff and her class as "eligible" for the relief granted. 42 U.S.C. § 1383c(b)(2). This indicates an unmistakable purpose to give nationwide relief, paralleling the requirement of notifications in all states. The question remains, however, whether any language adopted by Congress allows judicial relief.

One of defendants' most appealing contentions, if sound, is that Congress could easily have said what plaintiff contends it meant, and instead used a complex form of words seeming to retain the link between SSI benefits as such and Medicaid entitle-

*Internal Revenue,* 312 F.2d 65, 68 (2d Cir.1962). It is possible that Eighth Circuit language is generally a bit less bold. *E.g., Grand Laboratories, Inc. v. Harris,* 660 F.2d 1288, 1292 (8th Cir.1981) (Arnold, J.), *cert. denied,* 456 U.S. 927, 102 S.Ct. 1972, 72 L.Ed.2d 442 (1982). It is unlikely, however, that Eighth Circuit precedent is distinctly more literal-minded than precedents elsewhere. As Judge Stephenson wrote, "it remains the judicial function to give legislation its intended effect." *Hodgson v. Board of County Commissioners,* 614 F.2d 601, 614 (8th Cir.1980). *See also, Heckler v. Edwards,* 465 U.S. 870, 879, 104 S.Ct. 1532, 1537, 79 L.Ed.2d 878 (1984), rejecting "surface literal meaning," and *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 221, 230–1, 106 S.Ct. 2485, 2499, 91 L.Ed.2d 174 (1986), rejecting an incongruous "first blush" reading in favor of evaluation of the statutory language "as a whole" and the underlying Congressional purpose. I accept the fact that judges should not dramatically re-write statutes, but they may straighten out a garbled statement when the words do not "formally quite match" legislative purpose. That is what I find here.

ment. The corrective language chosen in the earned income context, however, was by no means simple. 42 U.S.C. § 1382h(b)(3).

Another contention of defendants is that the courts should defer to an administrative reading of the statute. But I must follow what I believe to be "clear Congressional intent" when there is conflict between such intent and administrative construction. *Immigration and Naturalization Service v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987). In this case, moreover, HCFA has waffled. The option to disregard the increased income suggests HCFA thought Congress intended such a result; otherwise, HCFA is offering to spend Federal funds for additional Medicaid in 209(b) states without authority. The option to include the new income and disregard the legislation apparently means that HCFA, like this court, recognized that the words chosen by Congress literally point in that direction. In effect, HCFA chose to give the 209(b) states the option to follow Congressional intent or the Congressional language. It becomes a judicial duty to resolve the question, not to straddle it.

I am assisted by the previously cited ruling of Judge Beatty. He ordered the State of Illinois to disregard the increased disabled widow(er) benefits because, although that state was a 209(b) state, its plan for Medicaid guaranteed eligibility when a person was eligible for SSP (State Supplemental Payments). The rule in Missouri is that "If a single individual has an adjusted gross income of the current SSI maximum per month or less and meets the other eligibility requirements, he will be eligible for Medical Assistance." 13 CSR 40–2.200(2). Thus the Missouri situation is parallel to that in Illinois, except that the Missouri income level that qualifies for Medicaid matches the SSI income level while the Illinois income level that qualifies for Medicaid matches the SSP income level in that state. While neither Ms. Darling nor the Illinois plaintiff was actually receiving SSI or SSP after the increases pushed them past the eligibility level, Congress mandated that they be "deemed" to be

receiving such benefits. *If "deemed" to be receiving those benefits, it seems they should be "deemed" to be receiving no more income than would qualify for such benefits.* All conditions of receiving such benefits may fairly be included in the concept that the widow(er)s should be deemed to be receiving the benefits. To say that the widow(er)s are deemed to be receiving the benefits but are not deemed to be qualified for the benefits is arguable but strained, and surely not the probable intent of a Congress which directed that *all* affected persons in *every* state should be notified of the relief being granted to them, as "eligible" persons.

The appropriate relief extends beyond Missouri and other states where the qualifying income level is the *same* for Medicaid as for SSI. If eligible Missouri recipients are "deemed" to have no more income than would qualify for SSI then there is no reason to conclude that other eligible persons in other states are deemed to have a higher *income* than the SSI qualifying amount. Thus, the higher incomes created by the 1984 increases should be disregarded for eligible disabled widows and widowers in all states. While this will not qualify persons for Medicaid in all states, it at least reduces the necessary spend-down. It is therefore

ORDERED that three classes be certified, as set forth above, and that summary judgment be entered in favor of plaintiff and against defendants. It is further

ORDERED that Federal defendants promptly withdraw Transmittal No. IM 86–2, insofar as it purports to give an option to 209(b) states to disregard the relief mandated by § 12202 of COBRA, and promptly notify the 209(b) states that they must tender the full relief mandated by § 12202 of COBRA. It is further

ORDERED that the time for making application for relief in 209(b) states shall not expire July 1, 1988, but shall expire in a reasonable time (no less than six months) after eligible disabled widows and widowers in such states have been given appro-

priate notice of their right to file written applications for protection. It is further

ORDERED that the parties confer and present to the court for its approval within thirty (30) days of this date appropriate forms of notice from HCFA and from the 209(b) states to carry out the orders herein. It is further

ORDERED that jurisdiction be retained to modify or clarify these orders.