Marietta DARLING, et al., Appellees,

v.

Otis R. BOWEN, M.D., Secretary of the Department of Health and Human Services; and the Health Care Financing Administration, Appellants.

Marietta DARLING, et al., Appellees,

v.

Michael REAGEN, Director of the Department of Social Services of the State of Missouri, Appellant.

Nos. 88–2210, 88–2098.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 9, 1989.

Decided June 28, 1989.

Rehearing and Rehearing En Banc Denied Sept. 7, 1989.

Robert Presson, Asst. Atty. Gen., Jefferson City, Mo., for Reagen.

Michael E. Robinson, Dept. of Justice, Washington, D.C., for Bowen & Health Care Financing.

Jeanne Finberg, Los Angeles, Cal., for appellees.

Before WOLLMAN and BEAM, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

■ The issue in this case is the effect of section 12202 of the Consolidated Omnibus Budget Reconciliation Act of 1986 (COBRA), 42 U.S.C. § 1383c(b), in which Congress attempted to remove the unintended adverse effects on certain individuals' Medicaid entitlement caused by increases in their disability benefits. Section 12202 provides that disabled widows and widowers who lost Supplemental Security Income (SSI) as a result of certain increases in their social security benefits are deemed for purposes of Medicaid entitlement to be individuals to whom SSI benefits are paid if they would be eligible for SSI if the increases were disregarded. Specifically, we must decide what effect this section has in states, known as "209(b) states", which have exercised their option not to provide Medicaid automatically to individuals who qualify for SSI, but, rather, define Medicaid eligibility according to their own resources and income criteria. In July 1986 the Health Care Financing Administration (HCFA), a branch of the Department of Health and Human Services (HHS), issued Transmittal No. 1M 86–2, providing that because SSI eligibility does not necessarily guarantee Medicaid eligibility in 209(b) states, section 12202 of COBRA does not require 209(b) states to disregard the relevant social security increases in determining Medicaid eligibility. Marietta Darling, as representative of the class of widows and widowers in 209(b) states adversely affected by the HCFA's Transmittal, filed this class action to challenge the HCFA's interpretation of section 12202. Appellants herein are the Secretary of HHS and the HCFA (collectively, the federal appellants), and the Director of the Department of Social Services of the State of Missouri. The district court[1] ordered the federal appellants to withdraw Transmittal No. 1M 86–2 and promptly notify all 209(b) states that they must tender the full relief mandated by section 12202 of COBRA. *Darling v. Bowen,* 685 F.Supp. 1125, 1131 (W.D.Mo.1988). We now affirm.

I.  BACKGROUND

A.  The "209(b)" Option

In order to understand the issue presented in this case, it is first necessary to review some history regarding the Medicaid program and the social security eligibility of disabled widow(er)s. The Medicaid program, established in 1965 as Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.,* "provid[es] federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." *Harris v. McRae,* 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). Initially, the Medicaid program required participating states to provide medical assistance to persons who received payments under one of four welfare programs established elsewhere in the Social Security Act. These programs were Old Age Assistance, Aid to Families with Dependent Children, Aid to the Blind, and Aid to the Permanently and Totally Disabled. Persons receiving aid under one of these four programs were referred to as the "categorically needy." *See generally Schweiker v. Gray Panthers,* 453 U.S. 34, 37, 101 S.Ct. 2633, 2637, 69 L.Ed.2d 460 (1981).

Since Medicaid's enactment, however, the social security programs have undergone substantial change. In 1972, Congress restructured the social security programs

---

**1.** The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

and replaced three of the four above-mentioned welfare programs with a new program entitled Supplemental Security Income for the Aged, Blind, and Disabled (SSI), 42 U.S.C. § 1381 *et seq.* Under SSI, the federal government assumed responsibility for both the funding of payments and setting the eligibility standards. In addition, Congress retained the requirement that all recipients of categorical welfare assistance—now including the new SSI program—were also entitled to Medicaid. Because the new SSI standards were broader than those that had existed before, a consequence of this restructuring was that the number of individuals eligible for Medicaid increased significantly in many states. Congress was concerned that states whose Medicaid liability increased as a result of SSI would withdraw from the Medicaid program. Thus, it offered to the states what is known as the section 209(b) option, set forth in 42 U.S.C. § 1396a(f). *See generally Schweiker v. Gray Panthers*, 453 U.S. at 38–39, 101 S.Ct. 2637–38.[2]

Under this option, states can opt out of the requirement of providing Medicaid assistance automatically to persons who receive SSI and elect instead to provide Medicaid assistance only to those individuals who would have been eligible under the state Medicaid plan in effect on January 1, 1972. "In other words, the § 209(b) option allows the States to avoid the effect of the link between the SSI and Medicaid programs: States may become either '§ 209(b)

States' or 'SSI States.' " *Herweg v. Ray*, 455 U.S. 265, 268, 102 S.Ct. 1059, 1063, 71 L.Ed.2d 137 (1982).

■ States exercising the 209(b) option are also required to adopt a "spend-down" provision, under which an individual whose income exceeds the state standard can become eligible for Medicaid when the excess (that part of his or her income that exceeds the state standard) is consumed by expenses for medical care. *Schweiker v. Gray Panthers*, 453 U.S. at 39 n. 5, 101 S.Ct. at 2638 n. 5. Fourteen states have elected the 209(b) option.

B. 1984 Social Security Increases and COBRA

In 1983, Congress enacted legislation to increase the social security benefits and create periodic cost of living adjustments for disabled widows and widowers. Social Security Amendments of 1983, Pub.L. No. 98–21, § 134, 1983 U.S.Code Cong. & Admin.News (97 Stat.) 97–98. These increases, which became effective in 1984, raised the incomes of some recipients above the eligibility level for SSI. In SSI states, beneficiaries whose incomes were pushed over the SSI eligibility level by the increases automatically lost Medicaid because, as explained above, in those states SSI eligibility is determinative of Medicaid eligibility. Beneficiaries in 209(b) states also suffered adverse Medicaid effects in that they were forced after the increases to pay increased spend-downs in order to receive Medicaid.[3]

---

**2.** Section 209(b) provides in pertinent part:

Notwithstanding any other provision of this subchapter, * * * no State not eligible to participate in the State plan program established under subchapter XVI of this chapter shall be required to provide medical assistance to any aged, blind, or disabled individual (within the meaning of subchapter XVI of this chapter) for any month unless such State would be (or would have been) required to provide medical assistance to such individual for such month had its plan for medical assistance approved under this subchapter and in effect on January 1, 1972, been in effect in such month, except that for this purpose any such individual shall be deemed eligible for medical assistance under such State plan if (in addition to meeting such other requirements as are or may be imposed under the State plan) the income of any such individual as determined

in accordance with section 1396b(f) of this title (after deducting any supplemental security income payment and State supplementary payment made with respect to such individual, and incurred expenses for medical care as recognized under State law) is not in excess of the standard for medical assistance established under the State plan as in effect on January 1, 1972.

42 U.S.C. § 1396a(f) (1982).

**3.** According to the appellees, the 1984 increases not only forced affected individuals in 209(b) states to meet increased spend-downs but also rendered some entirely ineligible for Medicaid. The appellees base this assertion on the claim that the opportunity to spend-down is available only to individuals who are otherwise eligible for SSI. Thus, the appellees explain, individuals in 209(b) states whose incomes rose above the

In 1986, Congress sought to eliminate the adverse impact of the 1984 social security increases on individuals' Medicaid entitlement by enacting section 12202 of CO-BRA, the statutory provision at issue in this case. Section 12202 essentially provides that a disabled widow(er) who lost SSI entitlement as a result of the 1984 social security increases "shall be deemed for purposes of [Medicaid] to be an individual with respect to whom [SSI] benefits * * * are paid * * * if he or she * * * would be eligible for [SSI] benefits * * * if the [1984 increases in widow(er)s' benefits] were disregarded". 42 U.S.C. § 1383c(b) (Supp. IV 1986).[4] Section 12202 also directs the Secretary of HHS to provide each state with the names of individuals receiving widow(er)s' benefits who might qualify for medical assistance by reason of the application of section 12202. COBRA, Pub. L. No. 99-272, § 12202(b), 100 Stat. 82, 291, 1986 U.S.Code Cong. & Admin.News 291 (not codified in 42 U.S.C. § 1383c). Further, section 12202 instructs the states, after receiving the names of eligible persons, to promptly notify such persons of their right to make application for assistance. *Id.* Congress originally required that potential beneficiaries of the provision apply for protected status before July 1, 1987. However, in the Omnibus Budget Reconciliation Act of 1987, Congress extended that period until July 1, 1988. Pub.L. No. 100-203, § 9108, 1987 U.S.Code Cong. & Admin. News (101 Stat.) 1330-302.

In July 1986 HCFA sent Transmittal No. 1M 86-2 to all states advising them of the requirements of section 12202. The Transmittal contained a statement specifically addressing the application of section 12202 in 209(b) states, providing that

> because eligibility for SSI/SSP benefits does not necessarily guarantee eligibility for Medicaid in a 209(b) State, such States may not be required to provide Medicaid to individuals solely because

SSI eligibility level after the increases lost the opportunity to spend-down and consequently were left with no access to Medicaid. The appellants disagree with the premise that the opportunity to spend-down is available only to individuals otherwise eligible for SSI. Thus, according to the appellants, the 1984 increases did not have the effect in 209(b) states of removing the availability of Medicaid for any beneficiaries. We need not resolve this question in this case; our conclusion regarding the correct interpretation of section 12202 is not governed by whether or not SSI eligibility is a prerequisite to the opportunity to spend-down. In either event, the 1984 increases seriously impaired the ability of affected individuals in 209(b) states to secure medical assistance.

**4.** The full text of the relevant portion of section 12202 provides:

(1) An eligible disabled widow or widower (described in paragraph (2)) who is entitled to a widow's or widower's insurance benefit based on a disability for any month under section 402(e) or (f) of this title but is not eligible for benefits under this subchapter [SSI] in that month, and who applies for the protection of this subsection under paragraph (3), shall be deemed for purposes of subchapter XIX [Medicaid] of this chapter to be an individual with respect to whom benefits under this subchapter [SSI] are paid in that month if he or she—

(A) has been continuously entitled to such widow's or widower's insurance benefits from the first month for which the increase described in paragraph (2)(C) was reflected in such benefits through the month involved, and

(B) would be eligible for benefits under this subchapter [SSI] in the month involved if the amount of the increase described in paragraph (2)(C) in his or her widow's or widower's insurance benefits, and any subsequent cost-of-living adjustments in such benefits under section 415(i) of this title, were disregarded.

(2) For purposes of paragraph (1), the term "eligible disabled widow or widower" means an individual who—

(A) was entitled to a monthly insurance benefit under subchapter II of this chapter for December 1983,

(B) was entitled to a widow's or widower's insurance benefit based on a disability under section 402(e) or (f) of this title for January 1984 and with respect to whom a benefit under this subchapter was paid in that month, and

(C) because of the increase in the amount of his or her widow's or widower's insurance benefits which resulted from the amendments made by section 134 of the Social Security Amendments of 1983 (Public Law 98-21) (eliminating the additional reduction factor for disabled widows and widowers under age 60), was ineligible for benefits under this subchapter [SSI] in the first month in which such increase was paid to him or her (and in which a retroactive payment of such increase for prior months was not made).

42 U.S.C. § 1383c(b) (Supp. IV 1986).

they meet [the COBRA] criteria. Assuming the individual meets all [other] criteria, the State *may elect* to disregard all or any part of the amount by which the individual's benefit increased, as well as subsequent cost-of-living (COLA) increases, in determining whether he or she is eligible for Medicaid as categorically needy.

*Darling v. Bowen*, 685 F.Supp. 1125, 1129 (W.D.Mo.1988) (emphasis added). Seven of the fourteen 209(b) states have taken advantage of the option stated in the Transmittal and have not disregarded the 1984 social security increases in determining Medicaid eligibility. *Id.*

Marietta Darling filed this suit against the Secretary of HHS and the HCFA to challenge the HCFA's above-quoted interpretation of section 12202 of COBRA. Darling is a 63–year old disabled widow of a former social security covered wage earner. Prior to the 1984 increases in widow(er)s' social security benefits, Darling was receiving both SSI and Medicaid. As a result of the 1984 increases, she ceased to be eligible for both SSI and Medicaid under Missouri's section 209(b) plan. Darling sought certification of a class of disabled widow(er)s in 209(b) states who have been or may be harmed by the HCFA's position stated in Transmittal No. 1M 86–2 that 209(b) states are not required by section 12202 to disregard the 1984 social security increases to disabled widow(er)s in determining Medicaid eligibility.

The district court granted class certification for a class of eligible disabled widow(er)s (as defined in 42 U.S.C. § 1383c(b)(2) of COBRA) in 209(b) states.[5]

As to the merits, the district court granted the plaintiffs' motion for summary judgment and ordered the federal defendants to "withdraw Transmittal No. 1M 86–2, insofar as it purports to give an option to 209(b) states to disregard the relief mandated by § 12202 of COBRA, and promptly notify the 209(b) states that they must tender the full relief mandated by § 12202 of COBRA." *Id.* at 1131. The district court further ordered that "the time for making application for relief in 209(b) states shall not expire July 1, 1988, but shall expire in a reasonable time (no less than six months) after eligible disabled widows and widowers in such states have been given appropriate notice of their right to file written applications for protection." *Id.* at 1331–32.[6]

■ For reasons to be explained, we affirm the decision of the district court and hold that the deeming provision of section 12202 of COBRA deems eligible individuals to be receiving no more income than would qualify them for SSI benefits and thus effectively mandates 209(b) states to disregard, for Medicaid purposes, the 1984 increases for eligible individuals to the extent necessary to reduce their incomes to the SSI eligibility level.

## II. DISCUSSION

The portion of section 12202 that is at issue in this case provides that an eligible disabled widow(er) who lost SSI entitlement as a result of the 1984 social security increases "shall be deemed for purposes of [Medicaid] to be an individual with respect to whom [SSI] benefits * * * are paid

---

**5.** The certified class did not include residents of Illinois, a 209(b) state, because relief similar to that sought here was afforded in *Hill v. Duffy*, No. 87–5208 (S.D.Ill. July 31, 1987). The district court also granted certification for two subclasses. The first includes Missouri residents *who* receive the disabled widow(er)s' payments and have lost SSI entitlement as a result of the 1984 increases. The district court reasoned that "eligible Missourians may have a special claim to relief in that while SSI *entitlement* as such is not a factor in determining benefits under the Missouri Medicaid plan, SSI entitlement *income* is the controlling income factor under that plan." *Darling*, 685 F.Supp. at 1126 (footnote omitted).

The second subclass consists of eligible disabled widow(er)s "who are residents of Missouri and all other 209(b) states that [, like Missouri,] use SSI entitlement income as the controlling income factor under their Medicaid plans." *Id.* at 1126–27 (footnote omitted).

**6.** Since the original decision, the district court has issued two subsequent orders. The appellants herein have filed separate appeals from one of these later orders and the appellees herein have cross-appealed. These appeals and cross-appeal were stayed by this court pending a decision in the instant case.

* * * if he or she * * * would be eligible for [SSI] benefits * * * if the amount of the [1984 increases] were disregarded." 42 U.S.C. § 1383c(b)(1) (Supp. IV 1986).

The appellants argue essentially that the plain language of section 12202 does not mandate a disregard of benefits to any individuals. Rather, they argue, the statute only deems a status (being an individual to whom SSI benefits are paid) on certain individuals who would otherwise have that status absent certain benefit increases. And, the appellants explain, SSI status, whether actual or deemed, has an automatic effect on Medicaid eligibility only in SSI states, where SSI status is actually determinative of Medicaid eligibility. In 209(b) states, on the other hand, SSI status is not determinative of Medicaid eligibility; 209(b) states determine Medicaid eligibility on the basis of their own income and resources criteria. Even though the appellants make a point to acknowledge that section 12202 does "apply" in all states and thus deems SSI status on eligible individuals in all states, the effect of their interpretation is that protection under the statute actually extends only to eligible individuals in SSI states because only in those states does SSI status have relevance for purposes of Medicaid eligibility.

The district court acknowledged that the appellants offered a "plausible literal meaning of the controlling language," *Darling*, 685 F.Supp. at 1129, but proceeded to reject their theory, believing it to be contrary to Congress's clear intent in section 12202 to give nationwide relief to disabled widow(er)s whose Medicaid entitlement was adversely affected by the 1984 social security increases. Thus, the district court concluded that section 12202 operates in 209(b) states to deem eligible individuals to be receiving no more income than would qualify for SSI benefits. *Id.* at 1131. We agree with the district court.

It is beyond dispute that "[o]ur objective in interpreting a federal statute is to achieve the intent of Congress." *Linquist v. Bowen*, 813 F.2d 884, 888 (8th Cir.1987). While as a general matter our interpretation must be governed by the statute's plain meaning, it is also a "well-established canon of statutory construction that a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute * * * *" *Bob Jones University v. United States*, 461 U.S. 574, 586, 103 S.Ct. 2017, 2025, 76 L.Ed.2d 157 (1983). We believe that this is a case in which a strict application of the statute's literal language would lead to a result unintended by Congress. In fact, a strict application of the literal language of the statute would defeat the overall purpose for which the statute was enacted (disregard of increase for Medicaid purposes) and result in inequitable and discriminatory treatment in the various states of the Union.

As the district court noted, a narrow focus on the literal language of section 12202 arguably suggests that the statute deems eligible individuals only to be receiving SSI and does not take the next step and deem such individuals to be receiving no more income than would qualify for SSI. However, under this interpretation the clear objective of the statute goes unrealized in 209(b) states. As explained above, SSI status *per se* is not relevant to Medicaid entitlement in 209(b) states. Thus, the end result of the appellants' interpretation is that section 12202—a statute clearly designed to remove the adverse effects on Medicaid eligibility caused by the 1984 increases—deems a status on eligible persons in SSI states which automatically entitles them to Medicaid and deems the same status on eligible persons in 209(b) states but has no effect on these individuals' Medicaid entitlement. We cannot accept the conclusion that in enacting legislation to remove the adverse effects of the 1984 increases Congress chose to provide full relief only to disabled widow(er)s in SSI states and left such individuals in 209(b) states obligated to pay increased spend-downs in order to receive Medicaid.

Moreover, the appellants' interpretation is inconsistent with the other provisions in the statute requiring that the Secretary provide "each state" with the names of eligible individuals and requiring "each state" to notify affected persons of their

right to apply for protection. We find it implausible that if Congress meant to benefit only eligible persons in SSI states, it would enact provisions requiring that eligible persons in "each state" be notified of their right to apply for the statute's protection.

In support of their position, the federal appellants argue that an explanation for Congress's apparent disparate treatment of disabled widow(er)s in SSI states and those in 209(b) states is that in enacting section 12202 Congress was concerned only with the *availability* of Medicaid to individuals receiving increased social security payments. And, the federal appellants explain, after the increases all such persons, whether in a 209(b) or SSI state, are left with some access to Medicaid; SSI state residents receive automatic Medicaid entitlement from "deemed" SSI status and 209(b) state residents can become eligible for Medicaid by spending down to the state standard whether or not the 1984 increases are disregarded.

We have difficulty accepting this argument because even assuming that widow(er)s in 209(b) states can indeed secure Medicaid benefits by spending down, *see* note 3 *infra,* the 1984 increases substantially impair their actual ability to meet the spend-down without foregoing basic necessities of life. It is clear that disabled widow(er)s in 209(b) states suffered adverse effects from the 1984 increases along with SSI state residents, even though 209(b) state residents may not have lost all access to Medicaid. Those 209(b) state residents who even before the increases had to meet a spend-down before receiving Medicaid became obligated after the increase to meet an even higher spend-down. And, some 209(b) state residents who received Medicaid under the state standard were pushed over the eligibility level by the 1984 increases and thus had to begin to meet a spend-down before receiving Medicaid. We find it difficult to conclude that Congress would respond to what clearly was a nationwide problem—the negative impact of the increases on Medicaid entitlement—by providing relief to individuals in some states and leaving others similarly situated to suffer the consequences.

The appellants complain that the district court relied upon its view of the underlying purpose of the statute without reference to supportive legislative history or other evidence of congressional intent. We consider the remedial goals of section 12202 to be plain from the face of the statute and also reflected in its brief legislative history. In Senate Report No. 99–146, it is stated:

> The Social Security Amendments of 1983 raised the amount of benefits for disabled widows and widowers aged 50 to 59, effective January 1984. As a result of the increase, some beneficiaries lost eligibility for Supplemental Security Income (SSI) and, consequently, Medicaid. The provision requires that those low-income widows and widowers who lost SSI eligibility because of the January 1984 disability benefit increase may file an application for protection with the State within 15 months after enactment and be deemed to be receiving SSI benefits for the purpose of medicaid eligibility. The provision further directs the Secretary to inform the States of the identities of affected individuals, and States to notify such individuals, solicit their applications for medicaid coverage and process their applications promptly.

S.Rep. No. 99–146, 99th Cong., 2d Sess., 1, 331, *reprinted in* 1986 U.S.Code Cong. & Admin.News 42, 296–97.

The appellants seize upon the language in the above-quoted passage providing that "some beneficiaries lost eligibility for [SSI] and, consequently, Medicaid" and argue that it indicates that Congress was concerned only with individuals whose loss of SSI meant automatic loss of Medicaid. We are not convinced. We believe that taken as a whole the above passage, as well as the statute itself, indicates an intent to remove adverse effects on Medicaid that occurred nationwide. Neither the statute nor its legislative history contains any explicit indication that relief was intended to reach only a portion of affected individuals.

■ While we accept as a general principle the appellants' claim that the courts

must defer to an agency's construction of a statute it administers, we are also mindful that in interpreting a statute an agency and the courts must avoid absurd results and deal with internal inconsistencies within a statute. *See United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). In addition, in interpreting a statute we must seek to adopt a construction which gives effect to all its provisions. *See Beef Nebraska, Inc. v. United States*, 807 F.2d 712, 717 (8th Cir. 1986). The interpretation of section 12202 urged by the appellants is one we consider to be unintended by Congress and one which fails to give full meaning to the statute's notice provisions which reflect Congress's intent that relief should reach all eligible disabled widow(er)s who were adversely affected by the 1984 increases.

## III. CONCLUSION

Accordingly, we affirm the district court's decision that the deeming provision in section 12202 deems eligible persons to be receiving no more income than would qualify for SSI as well as its order that the federal appellants withdraw Transmittal No. 1M 86–2 to the extent that it gives 209(b) states an option to completely disregard the 1984 increases referenced in section 12202.

Further, we affirm the district court's order that the time for making application for assistance under section 12202 in 209(b) states shall expire in a reasonable time but no less than six months after eligible disabled widow(er)s in such states have been given appropriate notice of their right to apply for section 12202 protection.