**Alberta NOLAND, et al., Appellants,**

v.

**Donna SHALALA, Secretary of Department of Health and Human Services, Appellee.**

**No. 92–5067.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 9, 1993.

Decided Jan. 7, 1994.

Jeanne Finberg argued the cause, for appellants. With her on the briefs were Gill Deford and Patricia B. Nemore.

Edith S. Marshall, Asst. U.S. Atty., argued the cause, for appellee. With her on the brief were J. Ramsey Johnson, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys.

Before: SILBERMAN, WILLIAMS and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

The Department of Health and Human Services has promulgated a regulation that enables certain states, in setting income eligibility levels for Medicaid assistance, to choose whether or not to exclude income received as a result of cost of living adjustments ("COLAs") to Social Security income.

Appellants challenge this regulation as contrary to the "Pickle Amendment," 42 U.S.C. § 1396a (note), and to § 303 of the Medicare Catastrophic Coverage Act, 42 U.S.C. § 1396a(r)(2). We find that the regulation complies with both statutes and affirm the district court's judgment upholding the regulation, 785 F.Supp. 179.

\* \* \*

Three separate income-assistance programs intersect: Old Age Survivors and Disability Insurance ("OASDI" or more colloquially "Social Security"), Supplemental Security Income ("SSI") and Medicaid. The Social Security program provides income to retired citizens, 42 U.S.C. §§ 401 *et seq.*, and its benefits increase annually in nominal dollars as a result of COLAs. 42 U.S.C. § 415(i). Some Social Security beneficiaries also qualify for SSI, a need-based program for the aged, blind and disabled. 42 U.S.C. §§ 1381 *et seq.* Benefit increases due to Social Security COLAs may raise a beneficiary's income enough to render him ineligible for SSI. (This was potentially anomalous until Congress indexed the floor for SSI eligibility in 1974. Pub.L. No. 93–368, § 6(b), 88 Stat. 420, 421–22 (1974), codified as amended at 42 U.S.C. § 1382f(a), retroactive to January 1, 1974, the effective date of the Social Security indexing. See Pub.L. No. 92–336, § 202, 86 Stat. 412–13 (indexing Social Security). But cf. *Lynch v. Rank*, 747 F.2d 528, 530 (9th Cir.1984), modified on other grounds, 763 F.2d 1098 (9th Cir.1985) (finding residual anomaly due to fact that federal $20 income "disregard" is not indexed).)

The third program, Medicaid, offers federal financial aid to states that reimburse the medical costs of needy individuals. 42 U.S.C. §§ 1396 *et seq.* State governments bear a substantial part of the cost, and they devise the eligibility requirements subject to federal approval. Most states automatically offer Medicaid benefits once an individual qualifies for federal SSI benefits. 42 U.S.C. § 1396a(a)(10)(A)(i). These are known as "SSI states."

In 1976 Congress decided to reverse one of the collateral effects of OASDI COLAs. As COLA income could, at the margin, push a

person above the SSI threshold, it could also, in SSI states, render him ineligible for Medicaid. Congress enacted the "Pickle Amendment" to change this result, guaranteeing that persons once eligible for SSI benefits, but later ineligible for SSI as a result of OASDI COLAs,[1] would receive Medicaid "in like manner and subject to the same terms and conditions as are applicable under such State plan" to SSI recipients. 42 U.S.C. § 1396a (note).

Not all states are SSI states, however. The others exercise an option provided by § 209(b) of Pub.L. No. 92–603, now codified at 42 U.S.C. § 1396a(f), known as the "209(b) option". This allows a state to set Medicaid income eligibility at a level lower than the income ceiling for SSI, but no lower than the state Medicaid income requirements that were in effect in 1972. Congress created the 209(b) option because liberal SSI eligibility standards threatened to enlarge Medicaid eligibility so much that states—which are not fully reimbursed for Medicaid—might have been seriously tempted to withdraw. *Schweiker v. Gray Panthers*, 453 U.S. 34, 38–39, 101 S.Ct. 2633, 2637–38, 69 L.Ed.2d 460 (1981), citing S.Rep. No. 93–553, p. 56 (1973). In 209(b) states, a person's eligibility or ineligibility for SSI is largely irrelevant to his or her Medicaid eligibility, which depends simply on his or her income, computed pursuant to the state's formula. In such states, a person whose income exceeds the Medicaid eligibility level may still receive Medicaid, *but only* after he incurs enough out-of-pocket medical costs to "spenddown" his excess income to the state's Medicaid eligibility level.[2]

The regulation disputed here, 42 CFR § 435.135, addresses the effect of the Pickle Amendment in both SSI and 209(b) states. For 209(b) states, HHS left to the discretion of the states whether to disregard Social Security COLAs in determining Medicaid eligibility and spenddowns. 42 CFR § 435.-135(c).

Appellants, Alberta Noland and Penny Knippenberg, are Social Security recipients who formerly were eligible for SSI and who would still be eligible if their Social Security COLAs were disregarded. They reside, however, in Ohio, a 209(b) state. Ohio chooses to include the Social Security COLAs fully in its computation of income for purposes of Medicaid eligibility. As a result, both appellants must "spenddown" more in order to become eligible for Medicaid than they would have had to spenddown if Ohio disregarded the COLAs (Noland must spenddown $106 instead of $22, Knippenberg $79 instead of $36).

\* \* \*

In reviewing an agency's construction of a statute that it is charged with administering, we "must give effect to the unambiguously expressed intent of Congress", *Chevron, U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984), but, if the statute is ambiguous on the relevant issue, we must uphold the agency interpretation if it is reasonable, *id.* at 844, 104 S.Ct. at 2782. HHS's interpretation of the Pickle Amendment, if not clearly mandated by Congress, is definitely reasonable. The Amendment provides:

**Preservation of Medicaid Eligibility for Individuals Who Cease To Be Eligible for Supplemental Security Income Benefits on Account of Cost–of–Living Increases in Social Security Benefits.** In addition to other requirements imposed by law as a condition for the approval of any State plan under Title XIX of the Social Security Act, there is hereby imposed the requirement (and each such State plan

---

1. Even though Congress indexed the SSI threshold to adjust for the COLA increases, a person could still become ineligible for SSI due to added income from COLAs, either because of the unindexed $20 income "disregard", *Lynch v. Rank*, 747 F.2d at 530, or because of an increase in other income. Because the Pickle Amendment protects beneficiaries when the COLAs are a "but for" cause of SSI ineligibility, *id.* at 531, it would protect such a person.

2. SSI eligibility is not entirely irrelevant in 209(b) states. Such states may allow SSI recipients to receive "categorically needy" status by means of spenddowns, while others would obtain only the less favorable "medically needy" status; the Pickle Amendment requires states to give Pickle beneficiaries the advantage enjoyed by SSI recipients. See *Lynch v. Rank*, 747 F.2d at 530.

shall be deemed to require) that medical assistance under such plan shall be provided to [1] any individual, for any month after June 1977 for which such individual is entitled to a monthly insurance benefit under [OASDI] but is not eligible for [SSI benefits], *in like manner and subject to the same terms and conditions as are applicable under such State plan* in the case of [2] individuals who are eligible for and receiving [SSI] for such month, if for such month [1] such individual would be (or could become) eligible for [SSI] except for amounts of income received by such individual and his spouse (if any) which are attributable to increase in the level of monthly [OASDI] which have occurred pursuant to [OASDI COLAs], in the case of such individual, since the last such month after April 1977 for which such individual was both eligible for (and received) [SSI] and was entitled to [OASDI], and, in the case of such individual's spouse (if any), since the last month for which such spouse was both eligible for (and received) [SSI] and was entitled to a monthly [OASDI] benefit. Solely for purposes of this section, payments of the type described in section 1616(a) of the Social Security Act or of the type described in section 212(a) of Pub.L. 93–66 shall be deemed to be [SSI benefits].

42 U.S.C. § 1396a, note (emphasis and brackets added).

Though cumbersome, the Pickle Amendment can be reduced to a simple directive: In determining Medicaid eligibility under each state's plan, "Pickle beneficiaries"

(those who have lost SSI eligibility as a result of Social Security COLAs, designated [1] above) must be subject to the same terms and conditions as are applicable to the specified benchmark class (those who currently receive SSI benefits in the same state, designated [2] above).

Under the state Medicaid plan before us, the Pickle beneficiaries receive exactly the same treatment as SSI recipients. The government asserts, and appellants do not contest, that for purposes of Medicaid eligibility Ohio *includes* Social Security COLAs in the countable income of *both* SSI recipients and Pickle beneficiaries.[3] Ohio thus accords the two classes equal treatment.

Awarding appellants the relief they seek—mandatory disregard of Pickle beneficiaries' Social Security COLAs—would contravene the statute, introducing an inequality between them and SSI recipients that does not exist under the regulation. To use the example urged in the appellants' brief, the following table represents (1) the current treatment of appellant Penny Knippenberg, (2) the treatment of Ms. Knippenberg requested by appellants, and (3) the treatment of a hypothetical SSI recipient in Ohio who is poorer than Ms. Knippenberg. At the time of the suit (1991), Ohio set its Medicaid income eligibility level at $350, while the federal income ceiling for SSI was $407. Ohio also disregarded $20 of income of all applicants in determining Medicaid income eligibility. Ohio Admin.Code § 5101: 1–39–18(L) (1993).

| | (1)<br>PK Now | (2)<br>PK under<br>Requested<br>Relief | (3)<br>Hypothetical<br>Poorer SSI<br>Recipient |
|---|---|---|---|
| Soc. Sec. Income | $406 | $406 | $385 |
| COLA (10.5%) | $ 43 | $ 43 | $ 41 |
| Total Income | $449 | $449 | $426 |
| | | | |
| Less State Disregard | $ 20 | $ 20 | $ 20 |
| Less COLA Disregard | $ 0 | $ 43 | $ 0 |
| Countable Income | $429 | $386 | $406 |
| | | | |
| Total Spenddown | $ 79 | $ 36 | $ 56 |

---

3. Income from retirement, survivors, or disability insurance is included under Ohio's definition of countable income. Ohio Admin.Code § 5101: 1–39–08 (1993). Cost of living benefits are not excluded in the provision enumerating exemptions and disregards. Ohio Admin.Code § 5101: 1–39–18(B)–(O) (1993).

Because Ohio includes COLAs to determine the Medicaid eligibility of SSI recipients, reading the Pickle Amendment to require full disregard of COLAs for Pickle beneficiaries would sometimes result in higher spenddown payments by SSI recipients—persons who, by definition, receive less income than Pickle beneficiaries. As illustrated above, the appellants' construction of the statute would require Penny Knippenberg, a person receiving $449, to spenddown only $36 before reaching Ohio's $350 threshold and thus receiving Medicaid, while the SSI recipient who receives $23 less in gross income would have to spenddown $20 *more* before receiving Medicaid. Nothing in the statute supports such an unfavorable treatment of SSI recipients, much less mandates it.

This is not to say that HHS might not conceivably adopt a reading under which the Pickle Amendment would affect the required spenddowns in 209(b) states. For example, HHS could perhaps have required such states to disregard COLAs for Pickle beneficiaries up to the point that made the Pickle beneficiaries ineligible for SSI, thus giving them the status of those SSI recipients who have the highest income countable for Medicaid purposes. Cf. 42 CFR § 435.135(c) (*limiting* any COLA disregard to that amount, for any 209(b) state that chooses to engage in *any* COLA disregard). Although this would enable Pickle beneficiaries to obtain Medicaid with the *same* spenddown as *poorer* SSI recipients, that result would be nowhere near so anomalous as appellants' reading of the statute.[4] We need not decide whether in fact HHS has authority to reach such a result. Although the legislative history (the key portion of which we reprint here as an Appendix) suggests an exclusive focus on the SSI states and on the anomalous impact of Social Security COLAs on Medicaid eligibility in such states, the statutory language is broader and may permit such a construction. But the statute surely does not require it.

Appellants invoke *Darling v. Bowen*, 878 F.2d 1069 (8th Cir.1989), construing § 12202 of the Consolidated Omnibus Budget Reconciliation Act of 1986 (codified at 42 U.S.C. § 1383c(b) (1988)), which has a purpose similar to that of the Pickle Amendment. In § 12202 Congress sought to protect certain disabled widows and widowers who had lost their SSI income (or would do so in the future) as a result of certain 1984 Social Security increases and subsequent COLAs. *Darling*, 878 F.2d at 1072. Rejecting "a narrow focus on the literal language" of the statute, the court said that it could not "accept the conclusion that ... Congress chose to provide full relief only to disabled widow(er)s in SSI states and left such individuals in 209(b) states obligated to pay increased spenddowns in order to receive Medicaid." *Id.* at 1074.

The government offers some possible grounds for distinguishing *Darling*. First, § 12202 directs that a widow(er) who loses SSI entitlement as a result of COLAs "shall be deemed for purposes of [Medicaid] to be an individual with respect to whom [SSI] benefits ... are paid ... if he or she ... would be eligible for [SSI] benefits ... if the amount of the [1984 increases] were disregarded." 42 U.S.C. § 1383c(b)(1) (Supp. IV 1986). See *Darling*, 878 F.2d at 1073–74. The Pickle Amendment does not "deem" Pickle beneficiaries to be SSI recipients; it merely directs that they be treated "in like manner and subject to the same terms and conditions" as SSI beneficiaries. Second, § 12202 contains notice provisions requiring that the Secretary provide "each state" with the names of eligible individuals to be notified of their right to apply for the statute's protection. The *Darling* court thought it "implausible" that Congress would have required the Secretary to give "each state" these names unless it intended the provision to reach *all* states, including 209(b) states.

---

4. In its purest, undisputed form the Pickle Amendment has its own anomalies. A former SSI recipient who qualifies as a Pickle beneficia-ry, for example, may enjoy Medicaid eligibility when an equally poor person who never qualified for SSI does not.

*Id.* at 1074–75. The Pickle Amendment contains no such directive.[5]

We need not consider whether these linguistic points would be adequate to distinguish *Darling* if it were a decision of this circuit. We believe that the court there focused on the wrong comparison group. Obviously disturbed with the different treatment received by Pickle beneficiaries in 209(b) states as compared to SSI states, the court read the provision to advantage *all persons* who lost SSI eligibility because of the specified Social Security increases, regardless of the states' explicit option under § 209(b) to pay no attention whatever to SSI eligibility. But this is not the command of § 12202, much less the Pickle Amendment. Both statutes ensure that such persons are treated the same as SSI beneficiaries under any particular state plan. Any other reading ignores the state-by-state flexibility that Congress created via the 209(b) option.

\* \* \*

■ Appellants' claim of inconsistency with 42 U.S.C. § 1396a(r)(2) fares no better. The section provides:

The methodology to be employed in determining income and resource eligibility for individuals under subsection ... (f) of this section [209(b)] ... may be less restrictive, and shall be no more restrictive, than the methodology—

(i) in the case of groups consisting of aged, blind, or disabled individuals, [employed] under [the SSI program].

42 U.S.C. § 1396a(r)(2). This statute ensures that 209(b) states use a methodology in determining Medicaid eligibility that is no more restrictive than that used by the federal government to ascertain SSI eligibility.

Again, HHS's decision to allow the 209(b) states to include Social Security COLAs complies fully with this directive. The federal government includes these COLAs in its assessment of SSI eligibility, as appellants concede. (Social Security income is included in the countable income for SSI eligibility, 42 U.S.C. § 1382a(a)(2)(B), and cost of living increases are not excluded, *id.* § 1382a(b).) Hence, the decision to allow 209(b) states to include COLAs in Medicaid determinations is in no way more restrictive.

\* \* \*

The option afforded the states by the HHS regulation comports fully with the statutory obligations of the states under both the Pickle Amendment and the Medicare Catastrophic Coverage Act. The relief sought by appellants, on the other hand, violates the statutory mandate of the Pickle Amendment, which directs that Pickle beneficiaries be treated "in like manner" as SSI recipients. Mandatory disregard of the full amount of Social Security COLAs would subvert that norm by treating Pickle beneficiaries more favorably in some instances than SSI recipients are treated under particular state plans.

The judgment of the district court upholding the HHS regulation is

*Affirmed.*

### APPENDIX

*Legislative History of the Pickle Amendment*

Present law provides for annual cost-of-living increases in payments under title II of the Social Security Act. Present law also provides for an increase in SSI benefits by the same percentage as is applicable for title II social security benefits. The intent of tying the two programs together for purposes of the benefit increase was to assure that SSI recipients would get the benefit of any social security benefit increase which became payable under the cost-of-living increase provision. An increase in social security benefits, therefore, does not ordinarily result in a decrease in SSI benefits.

However, because of the operation of the provision in the law for disregarding $20 a month of other income in determining the SSI benefit amount, there are some cases in which a social security benefit increase can have the effect of making individuals ineligible for SSI and also for medicaid benefits. For example, an individual in a State which does not supplement the basic Federal amount of $167.80 a month may

---

**5.** The Pickle Amendment indisputably has some impact in 209(b) states. See note 2 above.

still be eligible for $.80 in SSI payments even though he has a social security check of $187. This is because his social security check is considered as only $167 (applying the $20 disregard) for purposes of SSI. *Because he is eligible for an SSI payment, regardless of amount, he is automatically eligible for medicaid.* However, if in the future there were, for example, a 10 percent increase in social security benefits, his social security check would amount to $205.70. The SSI payment amount would increase to $184.60. The $20 disregard would still be effective, and his social security check for SSI purposes would be $185.70, or $1.10 above the SSI eligibility limit. *Although the individual still has the advantage of a cash benefit increase, the loss of SSI eligibility may carry with it a loss of medicaid.*

The committee bill would protect *individuals in this situation* by providing that no recipient of Federal benefits or State supplementary payments under the SSI program would lose eligibility for medicaid as the result of the operation of the cost-of-living benefit increase provision in title II. The committee provision would thereby insure that an increase intended to benefit the aged and disabled would not have inadvertent harmful effects.

S.Rep. No. 1265, 94th Cong., 2d Sess. at 27–28 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5997, 6021–22 (emphasis added).