United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued February 12, 2002 Decided May 3, 2002 

 No. 01-1218

 WorldCom, Inc., 
 Petitioner

 v.

 Federal Communications Commission and 
 United States of America, 
 Respondents

 Sprint Corporation, et al., 
 Intervenors

 Consolidated with 
 01-1229, 01-1243, 01-1255, 01-1256, 01-1257, 01-1267, 
 01-1274, 01-1310, 01-1311, 01-1313, 01-1319, 01-1321

 On Petitions for Review of an Order of the 
 Federal Communications Commission

 ---------

 Darryl M. Bradford argued the cause for Carrier petition-
ers and supporting intervenors. With him on the briefs were 
Thomas F. O'Neil III, William Single, IV, Brian J. Leske, 
John J. Hamill, Jodie L. Kelley, Mark C. Rosenblum, H. 
Richard Juhnke, John T. Nakahata, Timothy J. Simeone, 
Christopher W. Savage, David W. Carpenter, David L. Law-
son, Paul J. Zidlicky, Thomas Jones, Glenn B. Manishin, 
Genevieve Morelli, Richard J. Metzger, Brad Mutschelknaus, 
Richard M. Rindler, Charles C. Hunter, Catherine M. Han-
nan, Robert J. Aamoth, Deborah M. Royster and Albert H. 
Kramer. James P. Young entered an appearance.

 James B. Ramsay argued the cause for State Commission 
petitioners and supporting intervenors. With him on the 
briefs were Gretchen Dumas, Ellen S. LeVine, Lawrence G. 
Malone, Diane T. Dean, Susan Stevens Miller, Tracey L. 
Stokes, Betty D. Montgomery, Attorney General, State of 
Ohio, Duane W. Luckey and Steven T. Nourse, Assistant 
Attorneys General. Carl F. Patka entered an appearance.

 John A. Rogovin, Deputy General Counsel, Federal Com-
munications Commission, argued the cause for respondents. 
With him on the brief were John E. Ingle, Deputy Associate 
General Counsel, and Laurence N. Bourne and Rodger D. 
Citron, Counsel. Catherine G. O'Sullivan and Nancy C. 
Garrison, Attorneys, U.S. Department of Justice, entered 
appearances.

 Mark L. Evans argued the cause for intervenors BellSouth 
Corporation, et al. With him on the brief were Michael K. 
Kellogg, Sean A. Lev, Aaron M. Panner, Scott H. Angstreich, 
Roger K. Toppins, Gary L. Phillips, James D. Ellis, Michael 
E. Glover, Edward H. Shakin, John M. Goodman, Lawrence 
E. Sarjeant, Linda L. Kent, John W. Hunter and Julie E. 
Rones.

 Howard J. Symons, Sara F. Leibman and Douglas I. 
Brandon were on the brief for intervenor AT&T Wireless 
Services, Inc. Michelle M. Mundt entered an appearance.

 Before: Sentelle and Tatel, Circuit Judges, and 
Williams, Senior Circuit Judge.

 Opinion for the Court filed by Senior Circuit Judge 
Williams.

 Williams, Senior Circuit Judge: Section 251(b)(5) of the 
Telecommunications Act of 1996, 47 U.S.C. ss 151-714 (the 
"1996 Act" or the "Act"), directs all local exchange carriers 
("LECs") to "establish reciprocal compensation arrangements 
for the transport and termination of telecommunications." 47 
U.S.C. s 251(b)(5). In the order before us the Federal 
Communications Commission held that under s 251(g) of the 
Act it was authorized to "carve out" from s 251(b)(5) calls 
made to internet service providers ("ISPs") located within the 
caller's local calling area. It relied entirely on s 251(g). 
Because that section is worded simply as a transitional device, 
preserving various LEC duties that antedated the 1996 Act 
until such time as the Commission should adopt new rules 
pursuant to the Act, we find the Commission's reliance on 
s 251(g) precluded. Thus we remand the case. Because 
there may well be other legal bases for adopting the rules 
chosen by the Commission for compensation between the 
originating and the terminating LECs in calls to ISPs, we 
neither vacate the order nor address petitioners' attacks on 
various interim provisions devised by the Commission.

 * * *

 Due in part to the 1996 Act, local telephone service areas 
are now typically (perhaps universally) served by more than 
one LEC. The reciprocal compensation requirement of 
s 251(b)(5), quoted above, is aimed at assuring compensation 
for the LEC that completes a call originating within the same 
area. Although its literal language purports to extend recip-
rocal compensation to all "telecommunications," the Commis-
sion has construed it as limited to "local" traffic only. In the 
Matter of Implementation of the Local Competition Provi-
sions in the Telecommunications Act of 1996, 11 FCC Rcd 
15499, 16012-13, p p 1033-34, 16015-16, p 1040 (1996) ("Local 

Competition Order"); 47 C.F.R. s 51.701(a). For long dis-
tance calls, by contrast, the long-distance carrier collects from 
the user and pays both LECs--the one originating and the 
one terminating the call. Local Competition Order, 11 FCC 
Rcd at 16013, p 1034.

 In an earlier order, the Commission excluded ISP calls 
from the reach of s 251(b)(5) on the theory that they were 
indeed not "local." In the Matter of Implementation of the 
Local Competition Provisions in the Telecommunications 
Act of 1996, Inter-Carrier Compensation for ISP-Bound 
Traffic, 14 FCC Rcd 3689 (1999) ("Initial Order"). It reached 
this conclusion by applying its "end-to-end" analysis, tradi-
tionally employed in determining whether a call was jurisdic-
tionally interstate or not, stressing that ISP-bound traffic 
ultimately reaches websites that are typically located out-of 
state. See id. at 3689-90, p 1, 3695-98, p p 10-12, 3703, p 23 
(1999). On review, we held that the order had failed to 
adequately explain why the traditional "end-to-end" jurisdic-
tional analysis was relevant to deciding whether ISP calls 
fitted the local call or the long-distance call model, and 
vacated and remanded the order. Bell Atlantic Tel. Cos. v. 
FCC, 206 F.3d 1, 5, 8 (D.C. Cir. 2000).

 On remand, the FCC again reached the conclusion that the 
compensation between two LECs involved in delivering inter-
net-bound traffic to an ISP should not be governed by the 
reciprocal compensation provision of s 251(b)(5). In the Mat-
ter of Implementation of the Local Competition Provisions in 
the Telecommunications Act of 1996, Intercarrier Compensa-
tion for ISP-Bound Traffic, 16 FCC Rcd 9151, 9152-53, p 1 
(2001) ("Remand Order"). This decision rested, as we said, 
on s 251(g). Having thus taken ISP calls out of s 251(b)(5)'s 
reciprocal compensation obligation, the FCC proceeded to 
establish what it believed was an appropriate cost recovery 
mechanism. Remand Order, 16 FCC Rcd at 9154, p 4. The 
system adopted was "bill-and-keep," whereby each carrier 
recovers its costs from its own end-users. Id.

 In reaching the bill-and-keep solution, the Commission 
pointed to a number of flaws in the prevailing intercarrier 

compensation mechanism for ISP calls, under which the 
originating LEC paid the LEC that served the ISP. Because 
ISPs typically generate large volumes of one-way traffic in 
their direction, the old system attracted LECs that entered 
the business simply to serve ISPs, making enough money 
from reciprocal compensation to pay their ISP customers for 
the privilege of completing the calls. The Commission saw 
this as leading, at least potentially, to ISPs' charging their 
customers below cost. Remand Order, 16 FCC Rcd at 9153, 
p 2, 9154-55, p p 4-6, 9162, p p 19-21.

 To smooth the transition to bill-and-keep (but without fully 
committing itself to it), the FCC adopted several interim 
cost-recovery rules that sought to limit arbitrage opportuni-
ties by lowering the amounts and capping the growth of ISP-
related intercarrier payments. These tend to force ISP-
serving LECs to recover an increasing portion of their costs 
from their own subscribers rather than from other LECs. 
Remand Order, 16 FCC Rcd at 9155-57, p p 7-8. The transi-
tional rules take effect on the expiration of existing intercon-
nection agreements. Id. at 9189, p 82. Finally, the Commis-
sion specified that, having carved ISP-bound calls out of 
s 251(b)(5) under s 251(g), it was establishing the interim 
compensation regime under its general authority to regulate 
the rates and terms of interstate telecommunications services 
and interconnections between carriers under s 201 of the 
Act; as a result, the state regulatory commissions would no 
longer have jurisdiction over ISP-bound traffic as part of 
their power to resolve LEC interconnection issues under 
s 252(e)(1) of the Act. Id.

 Two sets of petitioners now challenge the Remand Order. 
One, headed by WorldCom (collectively "WorldCom"), con-
sists of competitive LECs that deliver calls to ISPs, and thus 
stand to lose reciprocal compensation payments. These com-
panies contend that the Commission erred in finding that 
s 251(g) authorized Commission exclusion of such calls from 
s 251(b)(5), and that, in any event, the interim compensation 
rules that the FCC adopted were not a product of reasoned 
decisionmaking and are contrary to the Act's terms. The 
other group, composed of several states and state regulatory 

commissions, complains that the order unlawfully preempts 
their authority to determine the compensation of ISP-serving 
LECs.

 * * *

 Section 251(g) reads as follows:

 (g) Continued enforcement of exchange access and inter-
 connection requirements.
 
 On and after [the date of enactment of the Telecom-
 munications Act of 1996,] each local exchange carrier, to 
 the extent that it provides wireline services, shall pro-
 vide exchange access, information access, and exchange 
 services for such access to interexchange carriers and 
 information service providers in accordance with the 
 same equal access and nondiscriminatory interconnec-
 tion restrictions and obligations (including receipt of 
 compensation) that apply to such carrier on the date 
 immediately preceding [the date of enactment of the 
 Telecommunications Act of 1996] under any court order, 
 consent decree, or regulation, order, or policy of the 
 Commission, until such restrictions and obligations are 
 explicitly superseded by regulations prescribed by the 
 Commission after [such date of enactment]. During the 
 period beginning on [such date of enactment] and until 
 such restrictions and obligations are so superseded, such 
 restrictions and obligations shall be enforceable in the 
 same manner as regulations of the Commission.
 
47 U.S.C. s 251(g) (emphasis added). Both sides assume that 
Chevron U.S.A. Inc. v. Natural Resources Defense Council, 
Inc., 467 U.S. 837 (1984), is applicable, so that we must defer 
to any reasonable Commission interpretation not precluded 
by the language of the statute, read with the ordinary tools of 
statutory construction. We agree with petitioners that 
s 251(g) is not susceptible to the Commission's reading.

 On its face, s 251(g) appears to provide simply for the 
"continued enforcement" of certain pre-Act regulatory "inter-
connection restrictions and obligations," including the ones 

contained in the consent decree that broke up the Bell 
System, until they are explicitly superceded by Commission 
action implementing the Act. As the Conference Report 
explained, "[b]ecause the [Act] completely eliminates the pro-
spective effect of the AT&T Consent Decree, some provision 
is necessary to keep these requirements in place.... Ac-
cordingly, the conference agreement includes a new section 
251(g)." H.R. Rep. 104-458, at 122-23 (1996).

 On a prior occasion, the Commission also framed the scope 
of s 251(g) in similarly narrow terms:

 The term "information access" first appears [in the Act] 
 in sections [sic] 251(g). That provision is a transitional 
 enforcement mechanism that obligates the incumbent 
 LECs to continue to abide by equal access and nondis-
 criminatory interconnection requirements of the [AT&T 
 Consent Decree] when such carriers "provide exchange 
 access, information access and exchange services for such 
 access to interexchange carriers and information service 
 providers...." Because the provision incorporates into 
 the Act, on a transitional basis, these [AT&T Consent 
 Decree] requirements, the Act uses [AT&T Consent De-
 cree] terminology in this section. However, this provi-
 sion is merely a continuation of the equal access and 
 nondiscrimination provisions of the Consent Decree un-
 til superseded by subsequent regulations of the Commis-
 sion.
 
In the Matter of Deployment of Wireline Services Offering 
Advanced Telecommunications Capability, 15 FCC Rcd 385, 
407, p 47 (1999) (footnote omitted) (emphasis added).

 Of course such explanatory language can't be assumed to 
be exclusive; legislative or agency explanations of a provision 
may naturally tend to focus on its most salient features. 
Thus, despite legislative history speaking only in terms of the 
Consent Decree, plainly the preexisting "restrictions and 
obligations" covered by s 251(g) are not limited to Consent 
Decree obligations; the statute itself explicitly embraces pre-
existing obligations under a "regulation, order, or policy of 
the Commission." See also Noland v. Shalala, 12 F.3d 258, 

262 (D.C. Cir. 1994) ("Although the legislative history ... 
suggests an exclusive focus [of the statutory provision in 
question], the statutory language is broader and may permit 
[an alternative] construction."). But nothing in s 251(g) 
seems to invite the Commission's reading, under which (it 
seems) it could override virtually any provision of the 1996 
Act so long as the rule it adopted were in some way, however 
remote, linked to LECs' pre-Act obligations.

 We will assume without deciding that under s 251(g) the 
Commission might modify LECs' pre-Act "restrictions" or 
"obligations," pending full implementation of relevant sections 
of the Act. The Fifth Circuit appeared to make that assump-
tion in Texas Office of Public Utility Counsel v. FCC, 265 
F.3d 313 (5th Cir. 2001), where it implicitly relied on s 251(g) 
(by quoting language from an Eighth Circuit case, Competi-
tive Telecom. Ass'n v. FCC, 117 F.3d 1068, 1072 (8th Cir. 
1997)), in sustaining modifications of pre-Act regulations gov-
erning the access charges paid to LECs by inter-exchange 
carriers ("IXCs"). Id. at 324-25. But this assumption is not 
enough to justify the Commission's action here, as it seems 
uncontested--and the Commission declared in the Initial 
Order--that there had been no pre-Act obligation relating to 
intercarrier compensation for ISP-bound traffic. See Initial 
Order, 14 FCC Rcd at 3695, p 9; see also id. at 3690, p 1, 
3707-3710, p p 28-36. The best the Commission can do on 
this score is to point to pre-existing LEC obligations to 
provide interstate access for ISPs. See, e.g., Remand Order, 
16 FCC Rcd at 9164, p 27; In the Matter of MTS & WATS 
Market Structure, 97 F.C.C.2d 682, 711-15, p p 77-83 (1983). 
Indeed, the Commission does not even point to any pre-Act, 
federally created obligation for LECs to interconnect to each 
other for ISP-bound calls. And even if this hurdle were 
overcome, there would remain the fact that s 251(g) speaks 
only of services provided "to interexchange carriers and 
information service providers"; LECs' services to other 
LECs, even if en route to an ISP, are not "to" either an IXC 
or to an ISP.

 Having found that s 251(g) does not provide a basis for the 
Commission's action, we make no further determinations. 

For example, as in Bell Atlantic, we do not decide whether 
handling calls to ISPs constitutes "telephone exchange ser-
vice" or "exchange access" (as those terms are defined in the 
Act, 47 U.S.C. ss 153(16), 153(47)) or neither, or whether 
those terms cover the universe to which such calls might 
belong. Nor do we decide the scope of the "telecommunica-
tions" covered by s 251(b)(5). Nor do we decide whether the 
Commission may adopt bill-and-keep for ISP-bound calls 
pursuant to s 251(b)(5); see s 252(d)(B)(i) (referring to bill-
and-keep). Indeed these are only samples of the issues we do 
not decide, which are in fact all issues other than whether 
s 251(g) provided the authority claimed by the Commission 
for not applying s 251(b)(5).

 Moreover, we do not decide petitioners' claims that the 
interim pricing limits imposed by the Commission are inade-
quately reasoned. Because we can't yet know the legal basis 
for the Commission's ultimate rules, or even what those rules 
may prove to be, we have no meaningful context in which to 
assess these explicitly transitional measures.

 Finally, we do not vacate the order. Many of the petition-
ers themselves favor bill-and-keep, and there is plainly a non-
trivial likelihood that the Commission has authority to elect 
such a system (perhaps under ss 251(b)(5) and 252(d)(B)(i)). 
See, e.g., Allied-Signal, Inc. v. U.S. Nuclear Regulatory 
Comm., 988 F.2d 146, 150-51 (D.C. Cir. 1993) ("The decision 
whether to vacate depends on 'the seriousness of the order's 
deficiencies (and thus the extent of doubt whether the agency 
chose correctly) and the disruptive consequences of an inter-
im change that may itself be changed.' "). Thus, we simply 
remand the case to the Commission for further proceedings.

 So ordered.